1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10
11

12  GURKAMAL SINGH and
    ROSIE SANDHU,
13
                    Plaintiffs,
14
          v.
15
    L. FRANCIS CISSNA, Director, United
16  States Citizenship & Immigration Services;
    KIRSTJEN M. NIELSEN, Secretary,
17  Department of Homeland Security; JEFF
    SESSIONS, Acting United States Attorney
18  General,
19
                    Defendants.
20  _____/

Case No.  1:18-cv-00782-SKO

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

(Doc. 16)

21

22          Plaintiffs Gurkamal Singh ("Singh") and Rosie Sandhu ("Sandhu") (collectively,

23  "Plaintiffs") bring this action challenging the denial of a Petition for Alien Relative, USCIS Form

24  I-130 ("I-130"), filed by Plaintiff Sandhu on behalf of her husband, Plaintiff Singh.  (*See* Doc. 1

25  (Compl.).)  Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of

26  Civil Procedure 12(b)(6) (the "Motion").  (Doc. 16.)  Plaintiffs oppose the Motion.  (Doc. 18.)  For

27  the reasons that follow, the Court hereby GRANTS IN PART and DENIES IN PART the Motion.[1]

28
    _____
    [1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 13, 15.)

# I.    BACKGROUND

## A.    Factual Background

Plaintiff Singh is a citizen of India who entered the United States without inspection on or about March 7, 1996, at or near Brownsville, Texas.  (Compl. ¶ 7; Doc 1-2 (Compl. Ex. 1).)  In 1997, Plaintiff Singh filed a petition for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  (Compl. ¶¶ 47–48, Ex. 1 at 4.)  He was placed in removal proceedings and issued a notice to appear before an immigration judge.  (*Id*.)

In 2000, Plaintiff Singh, while living in Fresno, CA, met Evelyn Williams, a U.S. citizen who lived in Buttonwillow, CA.  (Compl. ¶ 55, Doc. 1-9 (Compl. Ex. 8) at 2; Doc 1-37 (Compl. Ex. 36) at 43–44.)  On April 24, 2001, Plaintiff Singh married Ms. Williams in Las Vegas, NV.  (Compl. ¶ 53, Ex. 8.)  On April 30, 2001, Ms. Williams filed an I-130 petition on behalf of Plaintiff Singh to initiate the process for him to become a lawful permanent resident of the United States.  (Compl. Ex. 1 at 4.)  In support of the petition, Ms. Williams and Plaintiff Singh submitted three copies of wedding photographs and a copy of their marriage certificate.  (*Id*.)

Plaintiff Singh and Ms. Williams were originally scheduled to appear for an interview in support of their I-130 petition on July 24, 2002, but the interview was rescheduled "allegedly because [Plaintiff Singh] required a Punjabi/English interpreter."  (Compl. Ex. 1 at 4.)  On October 8, 2002, Plaintiff Singh and Ms. Williams appeared, without an interpreter, at the U.S. Immigration and Naturalization Service ("INS") office in San Francisco, CA, to provide sworn testimony and supporting documentation in support of their I-130 petition.  (Compl. ¶ 54, Ex. 1 at 4; Ex. 36.)  The interviews of Ms. Williams and Plaintiff Singh, which were conducted separately, were video recorded.  (Compl. ¶¶ 58, 66, 70 and Ex. 1 at 4.)

During the interview by immigration officer Yurgin ("Officer Yurgin"), Ms. Williams made "statements about the false nature of her marriage" to Plaintiff Singh.  (Compl. ¶ 10.)  Attached to Plaintiffs' complaint is a document titled "United States Department of Justice, Immigration and Naturalization Service, Record of Sworn Statement in Affidavit Form" executed on October 8, 2002, purportedly signed by Ms. Williams and containing the following handwritten statement:

Oh my, I got a call from Peter Singh who asked me if I would be willing to get a so called husband. I said maybe and asked why. Later that day Peter and another man stopped by at my house and we talked a little more about what I needed in a man a housemate [sic]. This all took place the afternoon of the 4/23/01. When Kamel's uncle agreed to pay my PG&E bill in the amount of $1800.00 I said OK. Then 4/24/01 we went to Las Vegas. Where we were married 4/25/01 [sic]. We never have had sex. He has never truly moved in with me. From time to time he calls or stops by my house. We talk more on the phone than in person. I married him because I needed a man around the house, because I was being harassed by my ex-husband and my house was broken into. I just wanted a man there sometime. Also in the agreement he would be able to receive a greencard. If I would stay married to him [sic].

(Compl. ¶¶ 66, 98 and Ex. 1 at 4–5; Doc. 1-41 (Compl. Ex. 40).) Following the interview, Ms. Williams withdrew her I-130 petition on behalf of Plaintiff Singh, stating "This is a fake marriage. And I am requesting to be out of this marriage." (Compl. ¶ 80, Ex. 1 at 5.)

After the interview on October 8, 2002, Plaintiff Singh was placed into custody by USCIS agents. He maintained that "he did not enter into a fraudulent marriage" with Ms. Williams. (Compl. ¶ 71 and Ex. 1 at 5.) While in custody, Plaintiff Singh "initially refused to give Ms. Williams money to return home" yet ultimately provided $250 for Ms. Williams' use. (*Id.* ¶¶ 72–73. *See also* Compl. Ex. 1 at 5.)

On June 17, 2003, an immigration judge denied Plaintiff Singh's application for asylum, withholding of removal, and protection and issued a removal order against Plaintiff Singh. (Compl. ¶– 48, 123, Ex. 1 at 5.) Plaintiff Singh and Ms. Williams divorced on March 1, 2004. (Compl ¶ 53, 109, Ex. 8.)

Plaintiff Singh married Plaintiff Sandhu, a U.S. citizen, in Elkton, MD, on September 1, 2006. (Compl. ¶ 7, 110, Doc. 1-8 (Compl. Ex. 7).) Plaintiff Sandhu has filed a series of three unsuccessful I-130 petitions on behalf of Plaintiff Singh. The first was filed on October 23, 2006, and was denied by the U.S. Citizenship and Immigration Services (USCIS) in a decision dated September 30, 2009. (Comp. ¶¶ 110–111, Ex. 1 at 17–29.) The second petition was filed on September 23, 2011, and was denied by the Director of USCIS on January 6, 2014. (Compl. ¶ 112, Ex. 1 at 11–16.) Plaintiff Sandhu appealed the denial to the Board of Immigration Appeals, which dismissed the appeal on January 20, 2015. (Compl. 113, Doc. 1-3 (Compl. Ex. 2).)

On July 13, 2016, Plaintiff Sandhu filed her third I-130 petition on behalf Plaintiff Singh,

which forms the basis of this lawsuit.  (Compl. ¶ 114, Doc. 1-4 (Compl. Ex. 3).)  In support of the third petition, Plaintiff Sandhu submitted: a marriage certificate; a divorce certificate; "sworn affidavits"; "numerous utility bills"; "joint bank account and tax statements"; "family photos"; Plaintiffs' son's birth certificate; the expert declaration of Alan Hirsch, Esq., and Mr. Hirsch's curriculum vitae, "in connection with his professional analysis of CIS interrogation of Ms. Williams"; and a letter from Jeffrey Pearce, a private investigator, "documenting Ms. Williams's statements from when Mr. Pearce attempted to inquire or ask her about the bona fides of her prior marriage" to Plaintiff Singh.  (Compl. ¶¶ 66, 114, Ex. 1 at 6.)

In his declaration, Mr. Hirsch opined that Ms. Williams was "subject to the interrogation tactics that contribute to false confessions by leading people to conclude that maintaining innocence is futile whereas acknowledging guilt will be benign."  (Doc. 1-14 (Compl. Ex. 13) ¶ 12; s*ee also* Compl. ¶ 64, Ex. 1 at 6.)  Mr. Pearce's letter, dated November 6, 2015, indicates he spoke with Ms. Williams regarding Plaintiff Singh via telephone in February 2015.  (*See* Doc. 1-15 (Compl. Ex. 14); *see also* Compl. ¶¶ 92–93, Ex. 1 at 7.)  Mr. Pearce stated Ms. Williams

> became extremely defensive and started using vulgar language.  She [] repeatedly stated that she does not want to get involved anymore with this immigration case because she is afraid of going to jail and being afflicted with a $250,000.00 fine as threatened by immigration officers when she attended the I-130 interview several years ago with Gurkamal Singh.  She was also told if she ever tried to change what the record shows she said at the time of the interview they would prosecute her and put in her jail for 10 years.

(Compl. Ex. 14 at 2; Compl. ¶¶ 92–93, Ex. 1 at 7.)  Mr. Pearce also stated Ms. Williams said she is "deathly afraid because she was warned and threatened about getting involved in this case over and over again by those specific agents of U.S. Immigration and Customs Enforcement at the interview" and "especially believes they can and will put her in jail because of her criminal history."  (*Id*.)  Mr. Pearce's letter indicates that Ms. Williams "vividly remembers how afraid she was at the interview and how much she cried and sobbed at the time she signed a statement she was compelled to write."  (*Id*.)

On February 23, 2017, the U.S. Court of Appeals for the Ninth Circuit denied Plaintiff Singh's petition for review of the Board of Immigration Appeals' order dismissing his appeal from

an immigration judge's decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. *Singh v. Sessions*, 678 F. App'x 515 (9th Cir. 2017). On March 30, 2017, Plaintiff Singh filed an application for stay of deportation or removal for twelve months beginning March 10, 2017. (Compl. ¶ 51, Doc. 1-20 (Compl. Ex. 19).) Plaintiff Singh's petition for rehearing or rehearing en banc was denied by the Ninth Circuit in October 2017. (Compl. ¶ 50.)

On August 9, 2017, Plaintiffs personally appeared for an interview relating to their third I-130 petition at the USCIS Philadelphia Field Office. (Compl. ¶ 27.) During the interview, Plaintiff Singh was asked additional questions to obtain sworn testimony regarding his marital relationship with Ms. Williams. (Compl. Ex. 1 at 7.) He testified that he could not remember if he or Ms. Williams proposed because the decision to get married "just happened." (*Id*.)

On October 19, 2017, the USCIS issued a Notice of Intent to Deny ("NOID") Plaintiff Sandhu's I-130 petition. (Compl. ¶ 114, Ex. 1 at 7.) In response, Plaintiff Sandhu submitted 18 documents along with a 31-page letter from her attorney, which claimed that Ms. Williams was subjected to abuse, intimidated, and coerced by Officer Yurgin at the time she said that her marriage to Plaintiff Singh was a sham. (*Id. See also* Compl. ¶ 114.)

On March 13, 2018, the USCIS issued a Notice of Decision denying Plaintiff Sandhu's third I-130 petition, finding that, based on "the results of interviews," which entailed "discrepant and contradictory testimony," the documentary evidence, and Evelyn Williams' own admissions regarding her participation in a marriage fraud scheme," the petition is prohibited under Section 204(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1154(c), because "substantial and probative evidence establish[ed] that [Plaintiff Singh] previously entered into a sham marriage" with Ms. Williams "in an attempt to gain immigration benefits." (Compl. ¶¶ 29, 66, 114, Ex. 1 at 4, 9.) The Notice of Decision indicated that USCIS records showed that, after Ms. Williams executed her sworn statement and withdrawal, she stated to the immigration officials that the previous interview was rescheduled because "she did not want to continue with the marriage fraud scheme" and that Plaintiff Singh's relatives "threatened her with harm if she did not go through with" the scheme and "harassed her." (Compl. Ex. 1 at 5.) It also noted that Ms. Williams' I-130

petition on behalf of Plaintiff Singh was filed on "the sunset date of Section 245(i) of the [INA]."[2] (*Id.* at 4.)

The USCIS rejected Plaintiff Sandhu's argument that the October 8, 2002, interview of Ms. Williams was an example of "questionable interrogation tactics," and concluded that Plaintiff Sandhu did not meet her evidentiary burden to "establish that [Plaintiff Singh] did not seek to obtain benefits through a prior sham marriage." (Compl. Ex. 1 at 8–9.)

**B.     Plaintiffs' Complaint**

Plaintiffs filed this action on June 6, 2018, against Defendants L. Francis Cissna, Director of USCIS, Kirstjen M. Nielsen, Secretary of the Department of Homeland Security, and Jeff Sessions, Acting Attorney General of the United States, in their official capacities (collectively, "Defendants"), seeking a declaratory judgment that Plaintiff Singh is entitled to classification under the INA as an "immediate relative" of a U.S. citizen and an order enjoining Defendants from removing Plaintiff Singh from the United States until his claims have been heard or reviewed and declaring their conduct unconstitutional. (*See* Doc. 1 at 58–59.) Plaintiffs assert the following claims in the complaint: violation of Section 201(b) of the INA, 8 U.S.C. § 1151(b) ("Claim One"); (2) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 ("Claim Two"); (3) violation of Section 204(c) of the INA, 8 U.S.C. § 1154(c) ("Claim Three"); (4) violation of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, the latter pleaded as a claim under 42 U.S.C. § 1983 ("Claim Four"); and (5) violation of procedural due process arising under the Due Process Clause of the Fifth Amendment to the U.S. Constitution ("Claim Five"). (*See* Doc. 1.)

Plaintiffs challenge the USCIS's decision to deny Plaintiff Sandhu's third I-130 petition on the grounds that it was arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA. (Compl. ¶¶ 1, 114.) With respect to Ms. Williams' oral and written confessions, Plaintiffs contend that the USCIS's finding of marriage fraud should be set aside because Officer Yurgin intimidated and coerced Ms. Williams into making the confession and, as such, it was the

---

[2] Section 245(i) of the INA permits certain individuals who were otherwise ineligible for adjustment of status in the United States to pay a penalty fee for the convenience of adjusting status without leaving the United States, so long as the individual was a beneficiary of an immigrant visa petition filed on or before April 30, 2001. *See* 8 U.S.C. § 1255(i).

product of duress.  (*Id*. ¶¶ 10, 25, 58, 63, 65, 99, 119, 152.)  They allege that the video recording of Ms. Williams' interview "clearly demonstrates that [she] was under extreme duress at the time she said the marriage was a sham," and they criticize the USCIS's "discarding" of Mr. Hirch's "independent evaluation" of the video recording in favor of their "prejudicial and biased" review. (*Id*. ¶¶ 58, 75.)  Plaintiffs posit that even if Ms. Williams did not make her statements under duress, she was "already experiencing marital difficulties" with Plaintiff Singh, and the immigration officers "offered her a way out, not only of her marriage, but also of any legal ramifications for the fraud they had already convinced her had been established."  (*Id*. ¶ 79.)  They also characterize Ms. Williams' post-October 8, 2002 interview statements to immigration officers as the result of "Stockholm Syndrome," and note other statements by Ms. Williams at the interview that they contend indicate that Ms. Williams and Plaintiff Singh had a bona fide marriage.  (*Id*. ¶ 100, 103.) Plaintiffs explain that Plaintiff Singh initially refused to give Ms. Williams money to return home because he wasn't thinking too clearly and was "in total shock," and also point to "additional credible evidence" that was submitted to the USCIS that they contend demonstrate that Plaintiff Singh did not commit marriage fraud.  (*Id*. ¶ 26, 28.)

Plaintiffs also allege that the denial of their I-130 petitions by USCIS violated their substantive and procedural rights under the Due Process Clause by, respectively, "den[ying] them the fundamental right to preserve the integrity of their family" and not affording them "the opportunity to confront and/or cross examine" Ms. Williams or Officer Yurgin.  (*Id*. ¶¶ 138, 140–47.)  Plaintiffs further assert that the "statutory scheme" relating to I-130 petitions violates the Equal Protection Clause of the Fourteenth Amendment because "it took USCIS a total processing time of 2772 days or 7 years, 8 months to adjudicate the three Singh-Sandhu visa petitions, and a total time of 4237 days or 11 years, 7 months, and 13 days has elapsed in the process."  (*Id*. ¶ 139.)

## C.    Defendants' Motion to Dismiss

Defendants contend that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs' complaint fails to state a claim.  As to Claims One, Three, and Four, Defendants assert that Plaintiffs fail to state a claim because there is no independent cause of action under Sections 201(b) and 204(c) of the INA (Claims One and Two) and there is no allegation in the complaint that

Defendants acted under color of state law to support a claim under either 42 U.S.C. § 1983 ("Section 1983") or the Fourteenth Amendment (Claim Three). (*See* Doc. 16-1 at 8–9.)

Defendants further assert that Claim Two, violation of the APA, fails to state a claim because Plaintiffs "fail to present any facts that allow the Court to draw the reasonable inference that USCIS's decision is arbitrary and capricious." (*Id*. at 9–12.) Finally, Defendants contend that Claim Five fails as a matter of law because the USCIS provided Plaintiffs all the procedural due process to which they are entitled by law, and the Ninth Circuit's decision in *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013), does not warrant the additional process of cross-examination of adverse witnesses in this case.

In their opposition, Plaintiffs assert that their complaint includes "ample facts and evidence to allow this Honorable Court to draw the reasonable inference that USCIS's decision is arbitrary and capricious" in violation of the APA and therefore Claim Two "must survive" the Motion. (Doc. 18 at 10). Plaintiffs include in their brief over 12 paragraphs from their complaint, verbatim, that they contend not only demonstrate the sufficiency of their complaint to defeat the Motion but also establish affirmatively their entitlement to relief under the APA. (*Compare* Compl. ¶¶ 66 n.29, 75, 76, 78, 79, 80, 81, 82, 83, 85, 86, 87, 152 *with* Doc. 18 at 6–9, 15.)

With respect to Claim Five, Plaintiffs further assert that the factors applied in *Ching* to determine whether additional procedural due process is due "clearly cut in favor of" Plaintiffs. (Doc. 18 at 10.) Plaintiffs' opposition does not address Defendants' arguments directed to Claims One and Three, based on violations of the INA, and Claim Four, violation of the Fourteenth Amendment alleged under Section 1983.

**D.      Statutory and Regulatory Framework**

Adjustment of status is governed by section 245 of the INA, 8 U.S.C. § 1255 ("Section 1255"). Section 1255(a) states that:

> [t]he status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at

the time his application is filed.

8 U.S.C. § 1255(a). Although the text of Section 1255 expressly authorizes the Attorney General to adjust status, that authority is now vested in the Secretary of Homeland Security by virtue of the Homeland Security Act of 2002, 6 U.S.C. §§ 101 *et seq.* 6 U.S.C. § 271(b); *see also Clark v. Martinez*, 543 U.S. 371, 375 n.5 (2005) (noting that authority formerly exercised by the Attorney General and the INS under similar provision of the INA was transferred to the Secretary of Homeland Security and divisions of that Department, including USCIS, by the Homeland Security Act). Because of this transfer, the authority to adjudicate adjustment of status applications is now vested in the Director of USCIS. *Id.*; 8 C.F.R. § 245.2(a) (granting USCIS jurisdiction to adjudicate adjustment of status applications). Similarly, the authority to adjudicate I–130 visa petitions was transferred from the INS (and the Attorney General) to the Director of USCIS. 6 U.S.C. § 271(b); 8 C.F.R. § 204.1 & 204.2.

The application for adjustment of status to that of lawful permanent resident is USCIS Form I–485. 8 C.F.R. § 299.1. To be eligible for adjustment of status based on a family relationship to a citizen or a lawful permanent resident, an applicant must have an approved immigrant visa petition, the Petition for Alien Relative (Form I–130), in which the petitioner asks the USCIS to confirm the family relationship. *See* 8 U.S.C. § 1255(a); 8 C.F.R. §§ 204.1(a)(1), 204.2. *See* 8 U.S.C. §§ 1154(a)(1)(A)(i) and (b); 8 C.F.R. § 204.1(a). In visa petition proceedings, such as the adjudication of an I–130 by USCIS, the burden of proving eligibility for the benefit sought is on the petitioner. 8 U.S.C. § 1361.

A marriage entered into for the purpose of circumventing immigration laws is considered a fraudulent or sham marriage and is not recognized as enabling an alien spouse to obtain immigration benefits. *Vasquez v. Holder*, 602 F.3d 1003, 1014 n.11 (9th Cir. 2010) (citations omitted). Title 8 U.S.C. § 1154(c) provides in pertinent part:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to

enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) ("Section 1154(c)"); *see also* 8 C.F.R. § 204.2(a)(1)(ii). Thus, where there is "substantial and probative" evidence of such an attempt or conspiracy "contained in the alien's file," the petition must be denied, "regardless of whether that alien received a benefit through the attempt or conspiracy." C.F.R. § 204.2(a) (1)(ii). Further, once an alien is found to have engaged in marriage fraud, Section 1154(c) forecloses the possibility of any subsequent visa petition ever being approved on behalf of the alien. *Avitan v. Holder*, No. C–10–03288 JCS, 2011 WL 499956, at *7 (N.D. Cal. Feb. 8, 2011) (citing *Ghaly v. Immigration & Naturalization Serv.*, 48 F.3d 1426, 1436 (7th Cir. 1995) (acknowledging that Section 1154(c) is a "harsh law" because, an alien "can never become a citizen of the United States or even reside permanently in this country" once a finding has been made that the alien entered or attempted to enter into a sham marriage)). A prior admission of marriage fraud made in conjunction with a withdrawal of an earlier I–130 petition can be overcome by new evidence. *Matter of Laureano*, 19 I & N. Dec. 1, at *3–4 (1983) (affirming denial of I–130 petition after earlier petition was withdrawn and petitioner admitted that the earlier petition was based on a fraudulent marriage). However, a petitioner seeking adjustment of status under these circumstances bears a "heavy burden" to establish that a marriage is legitimate. *Id*. at * 4.

## II.    ANALYSIS

### A.    Legal Standard Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

In adjudicating a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient facts to state a claim for relief

that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007). "Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). The Court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

**B.        Claims One and Three Are Not Legally Cognizable**

Defendants move to dismiss Claims One and Three, violations of Sections 201(b) and 204(c) of the INA, on the basis that INA does not provide a mechanism for relief and that such claims must instead be brought under the APA. (Doc. 16-1 at 8–9.) The Court agrees with Defendants. The INA does not provide an independent cause of action in this context. *See Huiwu Lai v. United States*, No. C17-1704-JCC, 2018 WL 1610189, at *4 (W.D. Wash. Apr. 3, 2018). *See also Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010). *Accord*

*Jaskiewicz v. U.S. Dep't of Homeland Sec.*, No. 06 Civ. 3770(DLC), 2006 WL 3431191, at *4 (S.D.N.Y. Nov. 29, 2006) ("[T]he INA does not itself create a cause of action or federally-protected right."); *Sabhari v. Cangemi*, No. CIV. 04-1104 ADM/JSM, 2005 WL 1387595, at *8 (D. Minn. June 10, 2005) ("Although Plaintiffs' Complaint lists violation of INA § 201(b) and the APA as two separate causes of action, the APA serves as the vehicle for review of the alleged INA § 201(b) violation.").

Plaintiffs do not contend otherwise and, as such, concede this argument. *See Pecover v. Elec. Arts Inc.*, 633 F.Supp.2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum.").  Accordingly, the Court GRANTS the Motion as to Claims One and Three.  Because no amendment could cure this deficiency, the dismissal is with prejudice.

**C.     Claim Four States a Claim for Deprivation of Substantive Due Process but not Equal Protection**

**1.     Section 1983**

In Claim Four, Plaintiffs seek relief under Section 1983, asserting that they were deprived of the "fundamental right to preserve the integrity of their family," presumably pursuant to the Due Process Clause of the Fifth Amendment, when the USCIS denied Plaintiff Sandhu's I-130 petition. (Compl. ¶¶ 137–38.)  Plaintiffs further assert that the INA's "statutory scheme . . .  violates the Equal Protection Clause of the Fourteenth Amendment because it took USCIS a total processing time of 2772 days or 7 years, 8 months to adjudicate the three Singh-Sandhu visa petitions, and a total time of 4237 days or 11 years, 7 months, and 13 days has elapsed in the process."  (*Id*. at ¶ 139.)

Section 1983 imposes liability on:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  "To establish a prima facie case under [Section] 1983, [a plaintiff] must establish that: (1) the conduct complained of was committed by a person acting under color of state law; and

(2) the conduct violated a right secured by the Constitution and laws of the United States."

*Humphries v. County of L.A.*, 554 F.3d 1170, 1184 (9th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiffs do not sufficiently allege Defendants were acting under color of state law. *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) (Section 1983 only provides a remedy against persons acting under color of *state* law.) (emphasis added); *Gorenc v. Salt River Project Agricultural Improv. & Power Dist.*, 869 F.2d 503, 506 (9th Cir. 1989) ("Liability [under Section 1983] attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'") (citation omitted). Plaintiffs do not allege any wrongdoing by employees of a state government or any other persons acting under color of state law nor do they allege that any of the named Defendants were agents of the state. Defendants are all federal officers sued in their official capacities. (*See* Compl. ¶¶ 14–16.) "[B]y its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir.1997) (finding the plaintiff's complaint "invalid on its face in its reliance upon § 1983 as a cause of action against alleged federal government actors"). *See Daly–Murphy v. Winston*, 820 F.2d 1470, 1477 (9th Cir.), *amended*, 837 F.2d 348 (9th Cir. 1987) (Federal action allegedly causing the deprivation of a federal right is insufficient under Section 1983). In the absence of any state action, which Plaintiffs do not dispute, Claim Four, to the extent it is asserted under Section 1983, is not cognizable. Accordingly, the Court GRANTS the Motion as to Plaintiffs' Section 1983 claim.

The Court shall construe the allegations of Claim Four, which reference the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment, as asserted under the Fifth Amendment because the Fourteenth Amendment does not apply to federal actors. *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (incorporating the Fourteenth Amendment Equal Protection Clause against federal actors through Fifth Amendment Due Process Clause). *See also United States v. Navarro*, 800 F.3d 1104, 1112 n.6 (9th Cir. 2015).

### 2. Substantive Due Process

Plaintiffs claim that the denial of their I-130 petition violated their substantive due process

rights by denying them "the fundamental right to preserve the integrity of their family."[3] (Compl. ¶ 138.) The due process guarantees of the Fifth Amendment "include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (emphasis omitted).

It is well-settled that there is a liberty interest in living with one's immediate family. *See, e.g., Ching*, 725 F.3d at 1157 ("The right to live with and not be separated from one's immediate family is a right that ranks high among the interests of the individual and that cannot be taken away without procedural due process." (quotation omitted)). However, the Court has not identified any case where this interest was deemed sufficient to prevent the enforcement of a legitimate immigration law to remove a person at the cost of family separation. The Ninth Circuit recently rejected the notion that immigration enforcement resulting in family separation inherently violates a U.S. citizen's constitutional rights. *See Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) (holding that a U.S. citizen's due process rights were not violated by denial of his non-citizen wife and her children's visa petitions based on his own sex offense because "the generic right to live with family is 'far removed' from the specific right to reside in the United States with non-citizen family members," and holding that "a fundamental right to reside in the United States with [one's] non-citizen relatives" would "run[ ] headlong into Congress' plenary power over immigration."). *See also Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010) (holding that "lawfully denying Morales adjustment of status does not violate any of his or his family's substantive rights protected by the Due Process Clause" even "when the impact of our immigration laws is to scatter a family or to require some United States citizen children to move to another country with their parent"), *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc). *Cf. De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009) (stating, in dicta, that "family unity" theory of due process in immigration context is "implausible" because "no authority [has been identified] to suggest that the Constitution provides

---

[3] The due process guarantees of the Fifth Amendment "include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (emphasis omitted).

[alien petitioners] with a fundamental right to reside in the United States simply because other members of their family are citizens or lawful permanent residents").

The Court need not resolve this question now, however. *See In re Snyder*, 472 U.S. 634, 642 (1985) ("We avoid constitutional issues when resolution of such issues is not necessary for disposition of a case."). If the challenged action by the USCIS in denying the I-130 petition were "otherwise illegitimate and unlawful," then the deprivation of Plaintiffs' liberty interests in family integrity, even if typically insufficient to defeat the government's interest in enforcing valid immigration laws, "may be unlawful where it is not [] supported by a legitimate government interest." *Ramos v. Nielsen*, Case No. 18-cv-01554-EMC, 2018 WL 3730429, at *22 (N.D. Cal. Aug. 6, 2018). *Cf. Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987) (state had "no legitimate interest in interfering with [protected] liberty interest [in familial relations] through the use of excessive force by police officers"), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999). Because Plaintiffs have adequately pleaded that Defendants' actions violate the Administrative Procedure Act (as discussed below), Plaintiffs' substantive due process claim is sufficiently plausible to proceed at least on that basis. The Motion is DENIED as to that claim asserted in Claim Four.

### 3. Equal Protection

The Fourteenth Amendment provides that "[n]o state shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 474 U.S. 432, 439 (1985). The Fifth Amendment, which applies to the federal government, does not explicitly contain a similar provision. *See* U.S. Const. amend. V. However, "[w]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process" and the "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) citations and internal quotation marks omitted; alteration in original)). *See also United States v. Windsor*, 570 U.S. 744, 774 (2013) ("The liberty protected by the Fifth Amendment's Due Process

Clause contains within it the prohibition against denying to any person the equal protection of the laws."); *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").

In considering an equal protection challenge, the court "must first determine what classification has been created" by the legislation at issue. *Aleman v. Glickman*, 217 F.3d 1191, 1195 (9th Cir. 2000); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 589 (9th Cir. 2008). The plaintiff must allege facts showing that the "law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Lazy Y Ranch*, 546 F.3d at 589 (citation omitted).

Here, the basis of Plaintiffs' equal protection challenge is unclear. Plaintiffs allege that "the statutory scheme" applied to Plaintiffs because "it took USCIS a total processing time of 2772 days or 7 years, 8 months to adjudicate the three Singh-Sandhu visa petitions, and a total time of 4237 days or 11 years, 7 months, and 13 days has elapsed in the process." (Compl. ¶ 139.) It is not clear how these allegations regarding the time it took to adjudicate the three I-130 petitions constitute an equal protection challenge. Construing Plaintiffs' claim in the light most favorable, they appear to contend that Defendants violated their equal protection rights by taking longer to adjudicate the petition of a potential visa beneficiary whom the USCIS suspected (or previously determined) had engaged in marriage fraud than the petition of a potential visa beneficiary who had not. The plain language of the INA does not make any distinction between such beneficiaries, nor have Plaintiffs pleaded any facts showing that the INA is applied to such beneficiaries in a discriminatory manner or imposes different burdens on them. *See Lazy Y Ranch*, 546 F.3d at 589.

Because of the lack of clarity regarding the legal basis for Plaintiffs' equal protection claim, the Court GRANTS the Motion with respect to this claim as asserted in Claim Four. *See Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 889 (N.D. Cal. 2008) (dismissing equal protection claim with leave to amend where the plaintiff failed to allege "that he/she/it is a victim of any purposeful discrimination."), *aff'd sub nom. Catholic Charities CYO v. Napolitano*, 368 F. App'x 750 (9th Cir. 2010). *See also Cortes v. Sessions*, Case No. 17-cv-1773-PJH, 2017 WL 4865563, at *11–12 (N.D. Cal. Oct. 27, 2017). However, as set forth more fully below, the Court will permit Plaintiffs to amend the complaint to attempt to state an equal protection claim against Defendants

under the Fifth Amendment.

**D.      Claims Two and Five are Sufficiently Pleaded**

In Claim Two, Plaintiffs challenge the decision of USCIS denying Plaintiff Sandhu's I–130 petition on the merits, alleging that Defendants violated of the Administrative Procedures Act. (Compl. ¶¶ 131–33.)  Plaintiffs allege in Claim Five that their rights to procedural due process under the Fifth Amendment were violated because they were not given an opportunity to cross-examine witnesses in connection with the adjudication of the third I-130 petition.  The Court finds that Claims Two and Five both state a claim upon which relief can be granted.

**1.      Claim Two: Administrative Procedure Act**

**a.      Legal Standard**

The Administrative Procedure Act ("APA") subjects to judicial review any "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Under the APA, a reviewing court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. § 706(2)(A).  This "standard of review is a narrow one," demanding a "searching and careful" inquiry that assesses "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "The court is not empowered to substitute its judgment for that of the agency."  *Id.*  Nor is the court required to resolve any facts where relief is sought under the APA.  *Occidental Engineering Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).  Rather, the court's task is to determine whether the evidence in the administrative record permitted the agency to make the decision it did.  *Id.*  A court should uphold an agency decision even if it is "'of less than ideal clarity,'" so long as "'the agency's path may reasonably be discerned.'"  *Northwestern Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1478 (9th Cir. 1994) (citing *Motor Vehicle Mfr. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).  The agency need only show "'a rational connection between the facts found and the choices made.'"  *Motor Vehicle Mfr. Ass'n*, 463 U.S. at 43 (citation omitted).  "[R]eview is especially deferential in the context of immigration

policy." *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997).

**b.    Discussion**

The USCIS denied Plaintiff Sandhu's third I–130 petition filed on behalf of Plaintiff Singh pursuant to Section 204(c) of the INA, 8 U.S.C. § 1154(c), based on "the results of interviews, documentary evidence, and Evelyn Williams' own admissions regarding her participation in a marriage fraud scheme." (Compl. Ex. 1 at 9.)  Underlying Plaintiffs' APA claim is their contention that USCIS made an "erroneous determination that Mr. Singh's prior marriage was a sham, based on false allegations by Ms. Williams" and therefore "oppressively denied" the I-130 petition. (Compl. ¶¶ 114, 148, 151.)  Specifically, Plaintiffs contend that Ms. Williams' statements about the fraudulent nature of her marriage to Plaintiff Singh were "fabricated," "coerced" by Officer Yurgin, and "made under extreme duress" by someone who "capitulated under pressure and threats" of going to jail and losing her children because of the "vulnerability she developed as a result of hardships she suffered in her life growing up on the 'wrong side of the fence.'" (Compl. ¶¶ 10, 17, 57, 65, 78, 79, 106, 109, 152, 199.)

Defendants contend in their Motion that the USCIS's Notice of Decision denying Plaintiff Sandhu's third I-130 petition "pointed out that the answers given by Ms. Williams and Mr. Singh were not only discrepant, but contradictory," and that, upon being confronted with "these and other discrepancies" Ms. Williams "immediately admitted" that the marriage was a sham and signed a voluntary sworn statement affirming that admission. (Doc. 16-1 at 10.)  The Notice of Decision, however, does not identify the "discrepant and contradictory testimony" given by Ms. Williams and Mr. Singh on which the USCIS relies in denying the I-130 petition. (*See* Compl. Ex. 1 at 2–10.) Nor does it identify on what "documentary evidence," other than Ms. Williams' written confession, the USCIS relied for the denial. (*See id*.)  Because the standard on a motion to dismiss requires the Court to construe allegations of material fact in a light most favorable to Plaintiffs, and accept them as true, Plaintiffs' allegation that Ms. Williams' oral and written admissions were false must be accepted over Defendants' contrary assertions. *See Erickson*, 551 U.S. at 94; *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Consequently, Plaintiffs' assertions that Ms. Williams' admission of marriage fraud was false, that the administrative record before the USCIS

contained evidence showing the bona fides of Mr. Singh's marriage to Ms. Williams, such as car registration information, insurance statements, joint tax returns, and sworn affidavits, and that USCIS nevertheless denied the I-130 petition, raises a cognizable cause of action for judicial review of agency action under the APA's arbitrary and capricious standard. *See Angeles v. Johnson*, No. 13-CV-00008-BTM-RBB, 2014 WL 4912811, at *5 (S.D. Cal. Sept. 29, 2014). *Cf. Iredia v. Fitzgerald*, No. CIV.A. 10-228, 2010 WL 2994215, at *5 (E.D. Pa. July 27, 2010) (granting motion to dismiss a claim under the APA challenging the denial of an I-130 petition pursuant to Section 204(c) of the INA where the USCIS "simply chose to believe the ex-wife, ***who had no demonstrated reason to lie***, over the plaintiffs.") (emphasis added).

Additionally, given the nature of the allegations raised in the pleadings and exhibits thereto, it is premature at this stage of the proceedings to determine whether the USCIS's denial of Plaintiff Sandhu's third I-130 petition pursuant to Section 204(c) of the INA, 8 U.S.C. § 1154(c), violated the APA. Such determination is best suited for a motion for summary judgment with the benefit of the complete administrative record, which is not presently before the Court.[4] *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (In APA cases the administrative record is "the whole record," which "consists of all documents and materials directly or indirectly considered by agency decision-makers."); *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision.").

This is not to say that Defendants may not be successful later in this suit, particularly if the administrative record shows reality to be closer to Defendants' conception than Plaintiffs' version.[5]

---

[4] Although many of the exhibits attached to the complaint are the same as those contained in the administrative record, there are some notable omissions. For example, not attached to the complaint, but which comprises the administrative record, are the USCIS's Notices of Intent to Deny Plaintiff Sandhu's I-130 petitions, the copy of car registration information for Mr. Singh and Ms. Williams, the IRS account transcript showing Mr. Singh and Ms. Williams filed joint tax returns in 2001, Allied Interstate statements addressed to Mr. Singh at the address he shared with Ms. Williams, and, perhaps most pertinent to Plaintiffs' allegations, the video recording of the October 8, 2002 interviews of Plaintiff Singh and Ms. Williams.

[5] In their opposition to the Motion, Plaintiffs assert that the Court "should hold unlawful and set aside the final agency action in this matter as 'arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law,'" and in so doing appear to request that the Court adjudicate the merits of their APA claim in the context of Defendants' Motion. (*See* Doc. 18 at 9–10.) To the extent Plaintiffs seek in their opposition brief to move for summary judgment on their APA claim (Claim Two), that request is DENIED without prejudice, subject to being renewed upon submission of the

Since this is an APA action, the Court is limited in its scope of review, that is, whether substantial evidence supports the agency fact finding and whether the decision was legally erroneous. *See Melkonian v. Ashcroft*, 320 F.3d 1061, 1065 (9th Cir. 2003) (noting that an agency's factual findings must be upheld "if supported by reasonable, substantial, and probative evidence in the record"); *Bonnichsen v. U.S.*, 367 F.3d 864, 880 n.19 (9th Cir. 2004) ("substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal citation omitted). At this point, however, Defendants have not shown that Plaintiffs' allegations underlying Claim Two are implausible, and their Motion is DENIED as to this claim.

## 2. Claim Five: Procedural Due Process

### a. Legal Standard

The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A threshold requirement to a substantive or procedural due process claim is [a] plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). The Ninth Circuit has recognized that "[i]mmediate relative status for an alien spouse is a right to which citizen applicants are entitled [so] long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility" and that "this protected interest is entitled to the protections of due process." *Ching*, 725 F.3d at 1156. *See Shashlov v. Sessions*, Case No. 2:17-cv-2166-JFW-KS, 2017 WL 6496440, at *3 (C.D. Cal. Dec. 4, 2017).

"Due Process is flexible and calls for procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). It is not "a technical conception with a fixed content unrelated to time, place, and circumstances." *Id.* (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886 (1961)). Moreover, not every case requires a formal hearing or an opportunity to cross-examine witnesses to satisfy due process. To determine what process is required, courts consider three factors: (1) the private interest at stake; (2) the risk of erroneously

administrative record to the Court and in compliance with Federal Rule of Civil Procedure 56 and Rule 260 of the Local Rules of the United States District Court, Eastern District of California.

depriving the petitioner of that interest under the procedures currently in use, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens of adding or substituting the procedures used. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**b.    Discussion**

To determine whether Plaintiffs have adequately alleged a procedural due process challenge, the Court must apply the factors outlined in *Mathews*. In *Ching*, the Ninth Circuit applied *Mathews* where USCIS denied an I–130 petition under § 1154(c)(1). 725 F.3d 1149, 1157 (9th Cir. 2013). The *Ching* Court found the first two *Mathews* factors weighed heavily in favor of the petitioners because the alien spouse, Ching, was in deportation proceedings and would be removed from the country if the I–130 petition was denied. The court also found that Ching had presented "substantial" and "uncontested documentary evidence" to rebut her ex-husband's claim that their marriage was not bona fide. *Id*. at 1159. Accordingly, the court concluded that "under the specific circumstances of th[e] case," due process required a hearing with an opportunity for Ching to cross-examine her husband about his statements that their marriage was not bona fide. *Id*.

Defendants contend that Plaintiffs' claim for violation of their procedural due process rights is subject to dismissal because the USCIS complied with the process provided by applicable statue and regulation, and the *Ching* decision does not require additional process in this case. (Doc. 16-1 at 12–15.) Plaintiffs respond that the *Mathews* factors "clearly cut in favor" of providing them an opportunity to confront and/or cross-examine Ms. Williams and Officer Yurgin, as their case is "strikingly similar to *Ching*." (Doc. 18 at 10, 12.)

First, although Defendants assert that they "followed the statutory and regulatory requirements" applicable to the adjudication of Plaintiff Sandhu's I-130 petition on behalf of Plaintiff Singh, the Court, in the absence of the administrative record, cannot make that determination. The Court is unable to ascertain, for example, whether the NOID issued on October 19, 2017[6] specified "the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond" as required by 8 C.F.R. § 103.2(b)(8)(iv)

---

[6] The NOID is referenced in the Notice of Decision dated March 13, 2018. (*See* Compl. Ex. 1 at 7.)

because the NOID is not before the Court. *Cf. Shashlov*, 2017 WL 6496440, at *3 (finding that the plaintiffs "received all of the process to which they are entitled by statute and regulation" where the NOID "detail[ed] the evidence that supported the USCIS' finding of marriage fraud pursuant to 8 C.F.R. Section 103.2(b)(8)(iv)).

The Court next considers the *Mathews* factors. With respect to the first factor, assessment of the private interest that will be affected by the official action, Plaintiffs allege that "without an I-130 approval, Mr. Singh faces imminent removal from the United States, which would undoubtedly inflict immense hardship and irreparable harm upon the family." (Compl. ¶ 118.) Given the weight that is given to the right to live with and not be separated from one's immediate family, *see Ching*, 725 F.2d at 1157, these allegations demonstrate that the first factor of *Mathews* favors Plaintiffs.

It is less clear what weight should be given to the second (risk of erroneous deprivation) and third (governmental interest) factors. Both turn on the factual circumstances of this case, much of which is contained in the administrative record that is not yet before this Court. Plaintiffs allege in their complaint that Ms. Williams was "intimidated" by Officer Yurgin and coerced into making admissions of marriage fraud, which were false and resulted in an "erroneous determination that [Plaintiff] Singh's prior marriage was a sham." (Compl. ¶¶ 10, 25, 58, 63, 65, 94, 99, 119, 151, 152, 155.) Plaintiffs also allege that they presented "substantial evidence that [Plaintiff Singh's] first marriage was bona fide"—much of which is not presently before the Court, *see* Section II.D.1.b *supra*—to the USCIS in support of the I-130 petitions. (*Id.* ¶¶ 20, 66, 114, 120.) Taking Plaintiffs' allegations as true, as the Court must at this stage of the proceedings, they state at least a "plausible" claim that, in the absence of Plaintiffs' ability to cross-examine Ms. Williams and/or Officer Yurgin, there is a significant "risk of [an] erroneous" finding that Plaintiff Singh's marriage to Ms. Williams was fraudulent. *See Ching*, 725 F.2d at 1158 (determining that the "risk of erroneous deprivation" to be high where the USCIS based its marriage fraud determination solely on a six-sentence statement from an ex-spouse, solicited by USCIS officers at an "unexpected visit" to his home and could be "quite intimidating," and where the petitioners submitted "substantial evidence" that the first marriage was bona fide.) *See also, e.g., J.E.F.M. v. Holder*, 107 F. Supp. 3d 1119, 1142 (W.D. Wash. 2015) (denying motion to dismiss the plaintiff's procedural due process claim where it was

plausible that the current procedures employed during removal proceedings were inadequate), *aff'd in part, rev'd in part sub nom. J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)). Whether Plaintiffs can ultimately prevail on this issue once the administrative record is before the Court is a question for another day.[7]

With respect to the third *Mathews* factor, the fiscal and administrative burden of giving Plaintiffs the opportunity to cross-examine Ms. Williams and/or Officer Yurgin, is outside Plaintiffs' knowledge and therefore cannot be alleged in the complaint. Defendants do not address this factor in their Motion, strongly suggesting that such burden is, as it was in *Ching*, "relatively slight." *Id*. at 1159. Nevertheless, the Court cannot, on this scant record, evaluate in a meaningful way the burden that would be imposed by the additional due process. *See J.E.F.M. v. Holder*, *J.E.F.M. v. Holder*, 107 F. Supp. 3d at 1143 (finding that the burdens on the government related to the right to appointed counsel in removal proceedings "not sufficiently quantified or developed to allow the Court to engage in the balancing required by *Mathews*" and denying motion to dismiss procedural due process claim).

Administrative proceedings like the adjudication of I-130 petitions "must be carefully assessed to determine what process is due, given the specific circumstances involved" and must be determined on a "case by case basis." *Ching*, 725 F.3d at 1157. It is therefore premature to conduct the weighing process called for under *Mathews*, "which is more suitably addressed at the summary judgment stage of the case when a factual record has been developed." *Singh v. Holder*, No. C–13– 4958 EMC, 2014 WL 117397, at *6 (N.D. Cal. Jan. 10, 2014). Here, Plaintiffs have adequately alleged in their complaint a claim, based on *Mathews* and *Ching*, of entitlement to additional procedural due process under the Fifth Amendment to the U.S. Constitution, which is all that is

---

[7] The Court notes that the Ninth Circuit did not establish in *Ching* a right to cross-examine witnesses in every visa adjudication. Indeed, it has twice declined to find a *Mathews/Ching* violation in the context of the denial of an I-130 petition under 8 U.S.C. § 1154(c)(1). *See Alabed v.* Crawford, 691 F. App'x 430, 432 (9th Cir. 2017) (finding no procedural due process violation); *Dhillon v. Mayorkas*, 537 F. App'x 737, 738 (9th Cir. 2013) (finding no procedural due process violation in an opinion released within a week of *Ching* and heard by the same panel); *accord, e.g., Shashlov*, 2017 WL 6496440, at *4–6; *Mattson v. Kelly*, Case No. 3:15–cv–182–LRH–WGC, 2017 WL 4102463, at *10 (D. Nev. Sept. 14, 2017); *Avitan*, 2011 WL 499956, at *9; *Garcia–Lopez v. Aytes*, No. C 09–0592 RS, 2010 WL 2991720, at *4 (N.D. Cal. July 28, 2010).

required to survive a motion to dismiss under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555, 558–59. As such, the Motion is DENIED as to Claim Five.

**E.      Leave to Amend Claim Four Will be Granted**

Courts are free to grant a party leave to amend whenever "justice so requires," Fed. R. Civ. P. 15(a)(2), and requests for leave should be granted with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)); *see Moss*, 572 F.3d at 972 (9th Cir. 2009). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 926 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Leave to amend Claim Four will be granted to give Plaintiffs the opportunity to state an equal protection claim against Defendants under the Fifth Amendment. Plaintiffs may not change the nature of this suit by adding new, unrelated claims in their amended complaint. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The Court notes that Plaintiffs' complaint is 60 pages in length. It is verbose, containing repetitive allegations, verbatim reproductions from attached exhibits, exaggerated characterizations, and argument of counsel, all set forth with various typographic emphasis. Plaintiffs' amended complaint must set forth their claims in ***short and plain terms, simply, concisely, and directly***. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. Plaintiffs must eliminate from their amended complaint all unnecessary repetition, argument, hyperbole, attempts to negate possible defenses, and the like. *See McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996).

Lastly, Plaintiffs are advised that an amended complaint supersedes the original complaint. *Lacey.*, 693 F.3d at 927. Therefore, Plaintiffs' amended complaint must be "complete in itself

without reference to the prior or superseded pleading." Rule 220, Local Rules of the United States District Court, Eastern District of California.

### III.     ORDER

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 16) is GRANTED IN PART AND DENIED IN PART.

2.      Plaintiffs' Claims One and Three are DISMISSED WITHOUT LEAVE TO AMEND.

3.      Plaintiffs' claim under 42 U.S.C. § 1983 asserted in Claim Four is DISMISSED WITHOUT LEAVE TO AMEND.

4.      Plaintiffs' claim for violation of their rights to equal protection asserted in Claim Four is DISMISSED WITH LEAVE TO AMEND.

5.      Any amended complaint shall be filed within 30 days. If Plaintiffs fail to file an amended complaint in compliance with this order, the Court shall dismiss Plaintiffs' equal protection claim asserted in Claim Four for failure to state a claim.

IT IS SO ORDERED.

Dated:   **September 30, 2018**                          /s/ *Sheila K. Oberto*
                                                                UNITED STATES MAGISTRATE JUDGE