# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURKAMAL SINGH and ROSIE SANDHU, <br><br>　　　　Plaintiffs, <br><br>　v. <br><br>L. FRANCIS CISSNA, Director, United States Citizenship & Immigration Services; KIRSTJEN M. NIELSEN, Secretary, Department of Homeland Security; JEFF SESSIONS, Acting United States Attorney General, <br><br>　　　　Defendants. <br> _____ / | Case No. 1:18-cv-00782-SKO <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** <br><br> (Doc. 29) |

Plaintiffs Gurkamal Singh ("Singh") and Rosie Sandhu ("Sandhu") (collectively, "Plaintiffs") bring this action challenging the denial of a Petition for Alien Relative, USCIS Form I-130 ("I-130"), filed by Plaintiff Sandhu on behalf of her husband, Plaintiff Singh. (*See* Doc. 28 (First Am. Compl.).) Pending before the court is Defendants' motion to dismiss ("Motion to Dismiss") Plaintiffs' equal protection claim and motion to strike ("Motion to Strike") the remainder of Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b), respectively. (Doc. 29.) Plaintiffs filed an opposition to Defendants' Motions on November

21, 2018. (Doc. 31.) After having reviewed the parties' papers, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the Court vacated the hearing set for December 19, 2018. (Doc. 32.)

For the reasons set forth below, the Court grants the Motion to Dismiss and grants, with leave to amend, the Motion to Strike.[1]

## I. BACKGROUND

**A. Factual Background[2]**

Plaintiff Singh is a citizen of India who entered the United States without inspection on or about March 7, 1996, at or near Brownsville, Texas. (First Am. Compl. ¶ 7; Doc 30-1 (Ex. 1 to First Am. Compl.) at 3.) In 1997, Plaintiff Singh filed a petition for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (Compl. ¶¶ 47–48, Ex. 1 to First Am. Compl. at 4.) He was placed in removal proceedings and issued a notice to appear before an immigration judge. (*Id*.)

In 2000, Plaintiff Singh, while living in Fresno, CA, met Evelyn Williams, a U.S. citizen who lived in Buttonwillow, CA. (First Am. Compl. ¶ 55, Doc. 30-8 (Ex. 8 to First. Am. Compl.) at 2; Doc 30-44 (Ex. 36 to First Am. Compl.) at 43:8–44:12.) On April 24, 2001, Plaintiff Singh married Ms. Williams in Las Vegas, NV. (First Am. Compl. ¶ 53; Ex. 8 to First Amended Compl. at 2.) On April 30, 2001, Ms. Williams filed an I-130 petition on behalf of Plaintiff Singh to initiate the process for him to become a lawful permanent resident of the United States. (Ex. 1 to First Am. Compl. at 4; *see* First Am. Compl. ¶ 53.) In support of the petition, Ms. Williams and Plaintiff Singh submitted three copies of wedding photographs and a copy of their marriage certificate. (*Id*.)

Plaintiff Singh and Ms. Williams were originally scheduled to appear for an interview in support of their I-130 petition on July 24, 2002, but the interview was rescheduled "allegedly because [Plaintiff Singh] required a Punjabi/English interpreter." (Ex. 1 to First Am. Compl. at 4.) On October 8, 2002, Plaintiff Singh and Ms. Williams appeared, without an interpreter, at the U.S. Immigration and Naturalization Service ("INS") office in San Francisco, CA, to provide sworn

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. (Docs. 13, 15.)

[2] This section relies wholly on the allegations of Plaintiffs' First Amended Complaint (Doc. 28) and exhibits thereto (Doc. 30).

2

testimony and documentation in support of their I-130 petition. (First Am. Compl. ¶ 54; Ex. 1 to First Am. Compl. at 4; Ex. 36 to First. Am. Compl.) The interviews of Ms. Williams and Plaintiff Singh, which were conducted separately, were video recorded. (First Am. Compl. ¶¶ 58, 66, 70; Ex. 1 to First Am. Compl. at 4.)

During the interview by immigration officer Yurgin ("Officer Yurgin"), Ms. Williams made "statements to USCIS about the false nature of her marriage to [Plaintiff] Singh." (First Am. Compl. ¶ 10.) Exhibit 40 to Plaintiffs' First Amended Complaint is a document titled "United States Department of Justice, Immigration and Naturalization Service, Record of Sworn Statement in Affidavit Form" executed on October 8, 2002, purportedly signed by Ms. Williams and contains the following handwritten statement:

> Oh my, I got a call from Peter Singh who asked me if I would be willing to get a so called husband. I said maybe and asked why. Later that day Peter and another man stopped by at my house and we talked a little more about what I needed in a man a housemate [sic]. This all took place the afternoon of the 4/23/01. When Kamel's uncle agreed to pay my PG&E bill in the amount of $1800.00 I said OK. Then 4/24/01 we went to Las Vegas. Where we were married 4/25/01 [sic]. We never have had sex. He has never truly moved in with me. From time to time he calls or stops by my house. We talk more on the phone than in person. I married him because I needed a man around the house, because I was being harassed by my ex-husband and my house was broken into. I just wanted a man there sometime. Also in the agreement he would be able to receive a greencard. If I would stay married to him [sic].

(Doc. 30-48 (Ex. 40 to First Am. Compl.); *see* First Am. Compl. ¶¶ 66, 97; Ex. 1 to First Am. Compl. at 4–5.) Following the interview, Ms. Williams withdrew her I-130 petition on behalf of Plaintiff Singh, stating "This is a fake marriage. And I am requesting to be out of this marriage." (Ex. 1 to First Am. Compl. at 5; First Am. Compl. ¶¶ 66.)

After the interview on October 8, 2002, Plaintiff Singh was placed into custody by USCIS agents. (First. Am. Compl. ¶ 71; Ex. 1 to First Am. Compl. at 5.) He maintained that "he did not enter into a fraudulent marriage" with Ms. Williams. (*Id*.) While in custody, Plaintiff Singh "initially refused to give Ms. Williams money to return home" yet ultimately provided $250 for Ms. Williams' use. (First Am. Compl. ¶¶ 72–73. *See also* Ex. 1 to First Am. Compl. at 5.)

On June 17, 2003, an immigration judge denied Plaintiff Singh's application for asylum,

3

withholding of removal, and protection and issued a removal order against Plaintiff Singh. (First Am. Compl. ¶¶ 48, 124; *see* Ex. 1 to First Am. Compl. at 5.) Plaintiff Singh and Ms. Williams divorced on March 1, 2004. (First Am. Compl. ¶¶ 53, 110; Ex. 8 to First Am. Compl.)

Plaintiff Singh married Plaintiff Sandhu, a U.S. citizen, in Elkton, MD, on September 1, 2006. (First Am. Compl. ¶¶ 7, 111; *see* Doc. 30-7 (Ex. 7 to First. Am. Compl.).) Plaintiff Sandhu has filed a series of three unsuccessful I-130 petitions on behalf of Plaintiff Singh. The first was filed on October 23, 2006, and was denied by the U.S. Citizenship and Immigration Services (USCIS) in a decision dated September 30, 2009. (First Am. Comp. ¶¶ 111–112; see Ex. 1 to First Am. Compl. at 17–29.) The second petition was filed on September 23, 2011, and was denied by the Director of USCIS on January 6, 2014. (First Am. Compl. ¶ 113; *see* Ex. 1 to First Am. Compl. at 11–16.) Plaintiff Sandhu appealed the denial to the Board of Immigration Appeals, which dismissed the appeal on January 20, 2015. (First Am. Compl. ¶ 114; *see* Doc. 30-2 (Ex. 2 to the First Am. Compl.).)

On July 13, 2016, Plaintiff Sandhu filed her third I-130 petition on behalf Plaintiff Singh, which forms the basis of this lawsuit. (First Am. Compl. ¶ 115; see Doc. 30-3 (Ex. 3 to the First Am. Compl.).) In support of the third petition, Plaintiff Sandhu submitted: a marriage certificate; a divorce certificate; "sworn affidavits"; "numerous utility bills"; "joint bank account and tax statements"; "family photos"; Plaintiffs' son's birth certificate; the expert declaration of Alan Hirsch, Esq., and Mr. Hirsch's curriculum vitae, "in connection with his professional analysis of CIS interrogation of Ms. Williams"; and a letter from Jeffrey Pearce, a private investigator, "reporting Ms. Williams's statements from when Mr. Pearce attempted to inquire or ask her about the bona fides of her marriage" to Plaintiff Singh. (First Am. Compl. ¶¶ 25–26, 138; *see* Ex. 1 to First Am. Compl. at 6.)

In his declaration, Mr. Hirsch opined that Ms. Williams was "subject to the interrogation tactics that contribute to false confessions by leading people to conclude that maintaining innocence is futile whereas acknowledging guilt will be benign." (Doc. 30-13 (Ex. 13 to First Am. Compl.) ¶ 12; s*ee also* First Am. Compl. ¶ 81; Ex. 1 to First Am. Compl. at 6.) Mr. Pearce's letter, dated November 6, 2015, indicates he spoke with Ms. Williams regarding Plaintiff Singh via telephone in

4

February 2015. (*See* Doc. 30-14 (Ex. 14 to First Am. Compl.); *see also* First Am. Compl. ¶¶ 92–93, Ex. 1 to First Am. Compl. at 7.) Mr. Pearce stated Ms. Williams

> became extremely defensive and started using vulgar language. She [] repeatedly stated that she does not want to get involved anymore with this immigration case because she is afraid of going to jail and being afflicted with a $250,000.00 fine as threatened by immigration officers when she attended the I-130 interview several years ago with Gurkamal Singh. She was also told if she ever tried to change what the record shows she said at the time of the interview they would prosecute her and put in her jail for 10 years.

(Ex. 14 to First Am. Compl. at 2; First Am. Compl. ¶¶ 92–93, Ex. 1 to First Am. Compl. at 7.) Mr. Pearce also stated Ms. Williams said she is "deathly afraid because she was warned and threatened about getting involved in this case over and over again by those specific agents of U.S. Immigration and Customs Enforcement at the interview" and "especially believes they can and will put her in jail because of her criminal history." (*Id.*) Mr. Pearce's letter indicates that Ms. Williams "vividly remembers how afraid she was at the interview and how much she cried and sobbed at the time she signed a statement she was compelled to write." (*Id.*)

On February 23, 2017, the U.S. Court of Appeals for the Ninth Circuit denied Plaintiff Singh's petition for review of the Board of Immigration Appeals' order dismissing his appeal from an immigration judge's decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. *Singh v. Sessions*, 678 F. App'x 515 (9th Cir. 2017). On March 30, 2017, Plaintiff Singh filed an application for stay of deportation or removal for twelve months beginning March 10, 2017. (First Am. Compl. ¶ 51, Doc. 30-19 (Ex. 19 to First Am. Compl.).) Plaintiff Singh's petition for rehearing or rehearing en banc was denied by the Ninth Circuit in October 2017. (First Am. Compl. ¶ 50.)

On August 9, 2017, Plaintiffs personally appeared for an interview relating to their third I-130 petition at the USCIS Philadelphia Field Office. (First Am. Compl. ¶ 27.) During the interview, Plaintiff Singh was asked additional questions to obtain sworn testimony regarding his marital relationship with Ms. Williams. (Ex. 1 to First Am. Compl. at 7.) He testified that he could not remember if he or Ms. Williams proposed because the decision to get married "just happened." (*Id.*)

On October 19, 2017, the USCIS issued a Notice of Intent to Deny ("NOID") Plaintiff

Sandhu's I-130 petition. (First Am. Compl. ¶ 115; Ex. 1 to First Am. Compl. at 7.) In response, Plaintiff Sandhu submitted 18 documents along with a 31-page letter from her attorney, which claimed that Ms. Williams was subjected to abuse, intimidated, and coerced by Officer Yurgin at the time she said that her marriage to Plaintiff Singh was a sham. (Ex. 1 to First Am. Compl. at 7–8; *see* First Am. Compl. ¶ 114.)

On March 13, 2018, the USCIS issued a Notice of Decision denying Plaintiff Sandhu's third I-130 petition, finding that, based on "the results of interviews," which entailed "discrepant and contradictory testimony," the documentary evidence, and Evelyn Williams' own admissions regarding her participation in a marriage fraud scheme," the petition is prohibited under Section 204(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1154(c), because "substantial and probative evidence establish[ed] that [Plaintiff Singh] previously entered into a sham marriage" with Ms. Williams "in an attempt to gain immigration benefits." (First Am. Compl. ¶¶ 29, 66, 115; *see* Ex. 1 to First Am. Compl. at 4, 9.) The Notice of Decision indicated that, according to USCIS records, after Ms. Williams executed her sworn statement and withdrawal, she stated to the immigration officials that the previous interview was rescheduled because "she did not want to continue with the marriage fraud scheme" and that Plaintiff Singh's relatives "threatened her with harm if she did not go through with" the scheme and "harassed her." (Ex. 1 to First Am. Compl. at 5.) It also noted that Ms. Williams' I-130 petition on behalf of Plaintiff Singh was filed on "the sunset date of Section 245(i) of the [INA]."[3] (*Id*. at 4.)

The USCIS rejected Plaintiff Sandhu's argument that the October 8, 2002, interview of Ms. Williams was an example of "questionable interrogation tactics," and concluded that Plaintiff Sandhu failed to meet her evidentiary burden to "establish that [Plaintiff Singh] did not seek to obtain benefits through a prior sham marriage." (Ex. 1 to First Am. Compl. at 8–9.)

**B.     Plaintiffs' First Amended Complaint**

On October 1, 2018, this Court granted in part Defendants' motion to dismiss Plaintiffs' original complaint. (Doc. 27.) Specifically, the Court dismissed, with prejudice, Plaintiffs' causes

---

[3] Section 245(i) of the INA permits certain individuals who were otherwise ineligible for adjustment of status in the United States to pay a penalty fee for the convenience of adjusting status without leaving the United States, so long as the individual was a beneficiary of an immigrant visa petition filed on or before April 30, 2001. *See* 8 U.S.C. § 1255(i).

of action brought under the INA and 42 U.S.C. § 1983 ("Section 1983"), and dismissed, with leave to amend, Plaintiffs' federal equal protection claim. (See id. at 11, 15–17, 25.) The Court however, denied Defendants' motion to dismiss Plaintiffs' Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and procedural due process causes of action. (See id. at 17–25.)

On October 30, 2018, Plaintiffs filed their First Amended Complaint against Defendants L. Francis Cissna, Director of USCIS, Kirstjen M. Nielsen, Secretary of the Department of Homeland Security, and Jeff Sessions, Acting Attorney General of the United States, in their official capacities (collectively, "Defendants"), seeking a declaratory judgment that Plaintiff Singh is entitled to classification under the INA as an "immediate relative" of a U.S. citizen and an order enjoining Defendants from removing Plaintiff Singh from the United States until his claims have been heard or reviewed and declaring their conduct unconstitutional. (*See* Doc. 28 at 42.) Plaintiffs assert the following claims in the complaint: (1) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701; (2) violation of due process and equal protection arising under the Due Process Clause of the Fifth Amendment; and (3) violation of procedural due process arising under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (*See* Doc. 28.)

Plaintiffs challenge the USCIS's decision to deny Plaintiff Sandhu's third I-130 petition on the grounds that it was arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA. (First Am. Compl. ¶¶ 1, 115.) Plaintiffs allege that the denial of their I-130 petitions by USCIS violated their substantive and procedural rights under the Due Process Clause by, respectively, "den[ying] them the fundamental right to preserve the integrity of their family" and not affording them "the opportunity to confront and/or cross examine" Ms. Williams or Officer Yurgin. (*Id*. ¶¶ 136, 142–44.) Plaintiffs also assert that the USCIS's denial of their petitions violated the Equal Protection Clause because it resulted in Plaintiff Singh's "prohibit[ion] from an approval" pursuant to Section 204(c) of the INA, 8 U.S.C. § 1154(c), despite the "plethora of . . . evidence in the record of proceedings" that is "more than sufficient to have approved the instant visa petition under any conceivable standard of proof." (*Id*. ¶ 139.) Plaintiffs further allege that the "statutory scheme" relating to I-130 petitions violates the Equal Protection Clause because "it took USCIS a total processing time of 2772 days or 7 years, 8 months to adjudicate the three Singh-Sandhu visa

petitions, and a total time of 4237 days or 11 years, 7 months, and 13 days has elapsed in the process." (*Id*. ¶ 140.)

**C.     Defendants' Motion to Dismiss and Motion to Strike**

On November 13, 2018, following the filing of Plaintiffs' First Amended Complaint, Defendants again moved to dismiss Plaintiffs' complaint for failure to state an equal protection claim, and moved to strike the First Amended Complaint pursuant to Fed. R. Civ. P. 41(b) for failure to comply with the Court's October 1, 2018, order to file an amended complaint in compliance with Fed. R. Civ. P. 8(a). (Doc. 29.) On November 21, 2018, Plaintiffs filed an opposition. (Doc. 31.)

**II.     DISCUSSION**

**A.     Motion to Dismiss**

Defendants contend that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs' second cause of action fails to state a claim for a violation of the equal protection guarantee of the Fifth Amendment. Defendants assert that Plaintiffs "merely repeat arguments made previously within their pleading," fail to "clearly state what group or class of individuals they were treated differently than," and "do not allege who they were discriminated against." (*See* Doc. 29-1 at 6–7.)

In their opposition, Plaintiffs assert that the "gist" of their federal equal protection claim is that "the innocent Plaintiffs and/or visa petition applicants suffered and continued to suffer disparate treatment because USCIS classified them as immigrant visa petition applicants suspected of or accused of marriage fraud whom are afflicted with the draconian consequences of a permanent bar pursuant to INA § 204(c) [8 U.S.C. § 1154(c)]." (Doc. 31 at 5.) Plaintiffs contend that they state a claim for a "class of one" under equal protection jurisprudent because they allege in their First Amended Complaint that Defendants "harbor serious animus against Plaintiffs in particular, afforded their plethora of supporting evidence short shrift, and therefore treated them arbitrarily and capriciously." (*Id*.)

**1.     Legal Standard Under Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199–1200 (9th

8

Cir. 2003). A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

In adjudicating a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007). "Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). The Court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n.19

**2. Analysis**

**a. Title 8 U.S.C. § 1154(c) Does Not Violate Equal Protection**

The Immigration and Nationality Act ("INA") exempts "immediate relatives" from statutorily-imposed numerical immigration quotas. 8 U.S.C. § 1151(a). Thus, an alien who qualifies as an "immediate relative" is granted permanent resident status ahead of thousands of other aliens who seek to immigrate to the United States each year. *See Novicio v. Holder,* No. 3:09-CV-00688-RCJ-VPC, 2010 WL 11531211, at *2 (D. Nev. June 9, 2010), *aff'd*, 481 F. App'x 411 (9th Cir. 2012). A spouse of a United States citizen is by definition an "immediate relative." 8 U.S.C. § 1151(b).

Marriage to a United States citizen is not difficult to orchestrate. Thus, because marriage to a citizen permits such a significant shortcut to the highly prized immigration visa through its conferral of "immediate relative" status, Congress anticipated that many would-be immigrants might be tempted to engage in marriage fraud. *Novicio v. Holder,* No. 3:09-CV-00688-RCJ-VPC, 2010 WL 11531211, at *2 (citing *Barmo v. Reno*, 899 F. Supp. 1375, 1380 (E.D. Pa. 1995)). To address this problem, Congress imposed through the INA and other statutes substantial criminal and civil penalties on those who evade or attempt to evade immigration restrictions through fraudulent marriages and on those who conspire with others to do so. *Barmo*, 899 F. Supp. at 1380. See 8 U.S.C. § 1325(c) (imposing maximum penalty of five years' imprisonment and $250,000 fine for marriage fraud)).

Among the stiffest of these penalties is that codified at 8 U.S.C. § 1154(c), which provides:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) ("Section 1154(c)"); *see also* 8 C.F.R. § 204.2(a)(1)(ii). This provision forecloses any means of immigrating legally to the United States once the alien is deemed to have

engaged in prior marriage fraud. *See Avitan v. Holder*, No. C–10–03288 JCS, 2011 WL 499956, at *7 (N.D. Cal. Feb. 8, 2011) (citing *Ghaly v. Immigration & Naturalization Serv.*, 48 F.3d 1426, 1436 (7th Cir. 1995) (acknowledging that Section 1154(c) is a "harsh law" because, an alien "can never become a citizen of the United States or even reside permanently in this country" once a finding has been made that the alien entered or attempted to enter into a sham marriage)). The bar imposed by Section 1154(c) "is both permanent and not waivable." *Novicio*, 2010 WL 11531211, at *2 (quoting *Barmo*, 899 F. Supp. at 1380). *See also* MARRIAGE FRAUD AMENDMENTS REGULATIONS, 53 Fed. Reg. 30011, 30012 (1988).

Plaintiffs allege that the denial of Plaintiff Sandhu's I–130 petition on the ground that Plaintiff Singh entered into a sham marriage in an attempt to gain immigration benefits, thereby foreclosing, under Section 1154(c), the possibility of any subsequent visa petition ever being approved on behalf of Plaintiff Singh, deprives Plaintiffs of equal protection of the law. (*See* First Am. Compl. ¶ 139. *See also* Doc. 31 at 5.) The Court disagrees. "Where, as here, the Congress has neither invaded a substantive constitutional right or freedom, nor enacted legislation that purposefully operates to the detriment of a suspect class, the only requirement of equal protection is that congressional action be rationally related to a legitimate governmental interest." *Harris v. McRae*, 448 U.S. 297, 326 (1980). *See Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1048 (9th Cir. 2017); *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011) ("We review equal protection challenges to federal immigration laws under the rational basis standard . . . ."). "A legislative classification must be wholly irrational to violate equal protection." *De Martinez v. Ashcroft*, 374 F.3d 759, 764 (9th Cir. 2004) (internal quotation marks omitted). Plaintiffs bear the burden "to negate every conceivable basis which might have supported the [legislative] distinction." *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (internal quotation marks omitted).

Section 1154(c) easily withstands rational basis review. Although the legislative history accompanying its original enactment is sparse, describing it only as a "prohibition against approval of a petition for an alien whose prior marriage was determined by the Attorney General to have been entered into for the purpose of evading the immigration law," S. Rep. No. 748, 89th Cong., 1st Sess.

11

23 (1965), this sparseness is not surprising, as "the purpose of Section 1154(c) is self-evident: to punish (as much as denial of a privilege can be said to do so) and thereby also to deter immigration marriage fraud." *Barmo*, 899 F. Supp. at 1380. Congress has a strong and legitimate interest in discipling and deterring such conduct. *See Blackwell v. Thornburgh*, 745 F. Supp. 1529, 1539 (C.D. Cal. 1989); *accord Anetekhai v. I.N.S.*, 876 F.2d 1218, 1222 (5th Cir. 1989). After all, marriage fraud not only "abuses both the Nation's hospitality and the rights of thousands of aliens who wait patiently in the non-preference, quota categories," it also "often exploits the trust of citizen spouses, many of whom enter the relationship with sincere matrimonial intentions only to discover they have been cruelly duped into a sham." *Barmo*, 899 F. Supp. at 1383 (citing HOUSE OF REPRESENTATIVES DEBATE ON IMMIGRATION MARRIAGE FRAUD AMENDMENTS OF 1986, 132 Cong. Rec. H8585–02 (1986)). Congress therefore reasonably could have concluded that prohibiting the approval of any subsequent visa petition behalf of an alien who had previously been accorded, or had sought to be accorded, an immediate relative or preference status by reason of a fraudulent marriage would have some effect in punishing and reducing the incidence of marriage fraud.

Section 1154(c) addresses marriage fraud sternly, forever banning aliens engaged in sham marriages from residing permanently here. But it is "nonetheless a response to a very real problem over which Congress was justifiably concerned." *Barmo*, 899 F. Supp. at 1383. Construing Plaintiffs' equal protection challenge to Section 1154(c) in the best possible light, Plaintiffs allegation is that Section 1154(c) violates their equal protection rights by treating a potential visa beneficiary who has engaged in marriage fraud differently from a potential visa beneficiary who has not done so. As such classification is rationally related to a legitimate governmental interest, *Harris,* 448 U.S. at 326, the Court finds that Section 1154(c) does not violate Plaintiffs' equal protection rights.

### b. Plaintiffs Do Not State an "Class of One" Equal Protection Claim

Plaintiffs' allegation that Defendants violated their right to equal protection by treating them arbitrarily and capriciously in denying Plaintiff Sandhu's I-130 petition (*see* First Am. Compl. ¶

139) also does not state an equal protection claim.[4] An equal protection claim based on a "class-of-one," which does not depend on a suspect classification such as race or gender, requires a plaintiff to allege that he has been (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Here, Plaintiffs' "class of one" allegations of the First Amended Complaint are conclusory, alleging only that Defendants have engaged in a "clear violation of equal protection" by denying Plaintiff Sandhu's I-130 petitions and "continuing to maintain that there is substantial and probative evidence" that Plaintiff Singh committed marriage fraud, where there is no such evidence. (First Am. Compl. ¶ 139.) There is no allegation, not even a conclusory one, that Plaintiffs were treated differently than similarly situated I-130 applicants—that is, applicants for whom there is evidence of an admission of participation in a marriage fraud scheme, nor is there any attempt to describe the differences in treatment. *See, e.g., Hamer v. El Dorado Cty.*, No. CIV S–08–2269 KJM EFB PS, 2011 WL 794895, at *12 (E.D. Cal. Mar. 1, 2011) ("As to the different treatment element, a plaintiff must demonstrate that the 'level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high'") (internal citation omitted). In addition, Plaintiffs have not explained how any difference in treatment was without a rational relationship to a legitimate state purpose, particularly given the strong governmental interest in punishing and reducing the incidence of marriage fraud, *see* Section II.A.2.a, *supra*. Merely alleging that Defendants acted "arbitrarily and capriciously" in denying Plaintiff Sandhu's I-130 petition is not sufficient, as a court determining the existence of a rational basis examines not whether there was a rational basis for the underlying conduct, but whether there was a rational basis for making the distinction about which the plaintiffs complain. *See Gerhart*, 637 F.3d at 1023 ("We have recognized that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action*").

---

[4] Plaintiffs appear to have abandoned their contention that the time it took to adjudicate Plaintiff Sandhu's three I-130 petitions constitutes an equal protection challenge, as they do not address it in their opposition. (*See* Doc. 31). Plaintiffs therefore concede Defendants' motion to dismiss on this issue. *See Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum.").

13

Plaintiffs were granted leave to amend their complaint to attempt to state an equal protection claim against Defendants; yet despite having been provided the explicit recitation of the deficiencies of their pleadings and the applicable legal standards in the Court's order (*see* Doc. 27 at 15–17), their latest amendment demonstrates that they are unable to marshal facts sufficient to constitute a cognizable equal protection claim against Defendants. No further leave to amend this claim will therefore be permitted. Accordingly, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' federal equal protection claim is DISMISSED. *Cf. Desmore v. Dep't of Homeland Sec.*, CIVIL ACTION NO. G-14-191, 2016 WL 561176, at *6 (S.D. Tex. Feb. 12, 2016) (dismissing equal protection challenge due to denial of a I–130 petition under Section 1154(c)).

**B.  Motion to Strike**

Defendants assert that Plaintiffs' First Amended Complaint should be stricken pursuant to Fed. R. Civ. P. 41(b) because it violates the Court's October 1, 2018 order directing Plaintiffs to file an amended complaint that complies with Fed. R. Civ. P. 8(a), and is instead "quite literally, nearly word for word identical" to the original complaint. (Doc. 29-1 at 8.) The First Amended Complaint, according to Defendants, "repeats the same arguments, hyperboles, attempts to negate possible defenses, and the like." (*Id*.)

Plaintiffs contend that they have "fully complied with the Court's [October 1, 2018] order in every imaginable and conceivable sense" because they have "reduced the length of the complaint to 40 pages from 60, removed the length quotation from exhibits, [and] removed most of the bold or italicized emphasis." (Doc. 31 at 8.)

A district court may impose sanctions, including involuntary dismissal of a plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b), where that plaintiff fails to prosecute his or her case or fails to comply with the court's orders, the Federal Rules of Civil Procedure, or the court's local rules. *See Thompson v. Housing Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to control their dockets and may impose sanctions including dismissal). In determining the appropriate sanction to impose under Rule 41(b), the Court must consider: "(1) the public's interest in expeditious resolution of litigation; (2) the [C]ourt's need to manage its docket; (3) the risk of prejudice to [the defendant]; (4) the availability

of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

Defendants' Motion to Strike fails to address any of the factors under Rule 41(b) and therefore such relief cannot be granted pursuant to that provision. *See Shrem v. Sw. Airlines Co.*, Case No. 15-cv-04567-HSG, 2017 WL 1478624, at *3 (N.D. Cal. Apr. 25, 2017) (denying motion to strike). Instead, Defendants assert that the First Amended Complaint should be stricken because it "leaves intact several inappropriate quotations" and "repeat[s] . . . unsupported assertions," requiring Defendants to "wade through the thicket of inappropriate pleadings in order to answer unsubstantiated allegations." (Doc. 29-1 at 8–9.) It appears, then, that Defendants' request to strike Plaintiffs' First Amended Complaint is more properly brought under Federal Rule of Civil Procedure 12(f), Local Rule 110, or the Court's inherent authority. *Cf. Vahora v. Valley Diagnostics Lab. Inc.*, Case No. 1:16–cv–01624-SKO, 2017 WL 2572440, at *1 (E.D. Cal. June 14, 2017) (analyzing a request to strike under Rule 12(f), Local Rule 110, and the court's inherent authority).

### 1. Legal Standard

A motion to strike pursuant to Rule 12(f) allows a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Scandalous" within the meaning of Rule 12(f) includes allegations that cast a cruelly derogatory light on a party or other person. *Ingram v. Grant Joint Union High Sch. Dist.*, No. CIV S-08-2490 FCD, 2010 WL 3245169, at *5 (E.D. Cal. Aug. 16, 2010) (citing *Talbot v. Robert Mathews Distributing Co.*, 961 F.2d 654, 665 (7th Cir. 1992)). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc.*, 984 F.2d at 1527). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). However, if a pleading is deficient, the Court may strike the pleading and require the non-moving party to submit

an amended pleading which includes more specific allegations. *Townshend v. Rockwell Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505, at *4 (N.D. Cal. Mar. 28, 2000). A court granting a Rule 12(f) motion should generally grant leave to amend, unless the amendment would be futile." *Freeman v. Alta Bates Summit Med. Ctr. Campus, et al.*, No. C 04-2019 SBA, 2004 WL 2326369, at *2 (N.D. Cal. Oct. 12, 2004) (internal citations omitted). *See also* 2-12 MOORE'S FEDERAL PRACTICE-CIVIL § 12.37 ("If a motion to strike is granted, the court should ordinarily grant the defendant leave to amend so long as there is no prejudice to the opposing party.")

Additionally, Local Rule 110 states that the "[f]ailure of counsel or of a party to comply with these [Local] Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." "[D]istrict courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion." *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998) (citation omitted). For example, "based on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders." *Jones v. Metro. Life Ins. Co.*, No. C–08–03971–JW (DMR), 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010) (collecting cases); *see, e.g., Dews v. Kern Radiology Med. Grp., Inc.*, No. 1:12–cv–00242–AWI–MJS (PC), 2013 WL 1284110, at *1 (E.D. Cal. Mar. 28, 2013) ("Courts have the inherent power to control their docket and in the exercise of that power . . . they may properly strike documents." (citing *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404–05 (9th Cir. 2010))).

As noted by the Supreme Court, "[a] primary aspect" of a court's "inherent powers" is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Nonetheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

**2. Plaintiffs' First Amended Complaint Does Not Comply with the Court's Order**

The Court's October 1, 2018 order gave Plaintiffs thirty days to "file an amended complaint in compliance with [the] order." (Doc. 27 at 25.) The order noted that Plaintiffs' 60-page original complaint did not conform to the Federal Rule of Civil Procedure 8, in that it was "verbose,

16

containing repetitive allegations, verbatim reproductions from attached exhibits, exaggerated characterizations, and argument of counsel, all set forth with various typographic emphasis." (*Id.* at 24.) The order provided Plaintiffs with detailed requirements for any first amended complaint, including the elimination of "all unnecessary repetition, argument, hyperbole, attempts to negate possible defenses, and the like." (*See id.*)

Plaintiffs have failed to comply with the specific instructions in this Court's prior order of October 1, 2018. Although Plaintiffs removed some of the typographic emphasis and verbatim reproductions of exhibits[5], reducing the length of the First Amended Complaint by 20 pages, it continues to be repetitive, continues to contain hyperbolic statements, and continues to make legal arguments rather than alleging facts. For example, the First Amended Complaint continues to contain the following allegations:

> In a similar case, *Ching v. Mayorkas*, this Court found, "In sum, grant of an I-130 petition for immediate relative status is a nondiscretionary decision. Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility. This protected interest is entitled to the protections of due process. The district court erred in holding that there was no protected interest." (*Compare* Doc. 1 ("Original Compl.") ¶ 4 *with* First Am. Compl. ¶ 4.)

> In its denial letter of the third petition, dated March 13, 2018—which mirrors the NOID of October 19, 2017—USCIS purveys "alternative facts" and/or "fake news." (*Compare* Original Compl. ¶ 66 & n.28 *with* First Am. Compl. ¶ 66 & n.29.)

> The Service's inference that Ms. Williams's statement was not a result of duress based on its opinion of the interviewing officer's technique is not reasonable. The interviewing officer's technique was not professional. Rather, it was sneaky, manipulative and calculated to cajole Ms. Williams to admit to fraud. Moreover, the interviewing officer did not display true compassion and empathy towards Ms. Williams. Instead, she convinced Ms. Williams that Ms. Williams was in danger, and she pretended to be the only one— "the truth, the way, and the light"—who could save Ms. Williams from impending doom. The Service's opinion as to its own officer's technique is not reasonable and is highly subjective. (*Compare* Original Compl. ¶ 76 *with* First Am. Compl. ¶ 76.)

> USCIS purports to dismiss Professor Alan Hirsch's credible opinion by stating that, "USCIS does not deem the expert declaration as persuasive. The mere fact that an

---

[5] In their Motion to Strike, Defendants criticize Plaintiffs' failure to attach exhibits to the First Amended Complaint, instead referring to the exhibits attached to the original, now superseded, complaint. (*See* Doc. 29-1 at 3.) Plaintiffs have since corrected this error by separately filing their exhibits, *see* Doc. 30.

17

expert says something does not make it significantly more likely to be true or conclusively true, experts disagree and even when they do agree, they may still be in error." We are astonished and flabbergasted at the completely disrespectful wave-off of Professor Hirsch's professional report without any substance behind it, whatsoever. It is reminiscent of many cases decried by federal courts where USCIS pretty much says that it is so because we said so. (*Compare* Original Compl. ¶ 87 *with* First Am. Compl. ¶ 87.)

As the Supreme Court has explained, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." An opportunity to confront and cross examine "'is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.'" The prejudice "standard does not demand absolute certainty; rather prejudice is shown if the violation potentially affects the outcome of the proceedings. We may infer prejudice even absent any allegations as to what the petitioner or his witnesses might have said . . . ." (*Compare* Original Compl. ¶ 96 *with* First Am. Compl. ¶ 95.)

Second, "Stockholm Syndrome" is a well-documented psychological phenomenon in which hostages have positive feelings towards their captors even after being released. The effect of Stockholm Syndrome is explained by the victim's subconscious belief that believing the same values as his or her abuser will cause the abuser to cease being a threat. The agents utilized abusive tactics specifically to manipulate Ms. Williams into aligning her position with their accusations. Therefore, it is reasonable that Ms. Williams would not only comply with the agents' demands, but also experience positive feelings of wanting to report back in order to stay aligned with the agents' beliefs. As such, the Service's inference that Ms. Williams was not under duress based on her subsequent contact with agents is not reasonable and does not help to meet its burden under INA §240(c). (*Compare* Original Compl. ¶ 100 *with* First Am. Compl. ¶ 99.)

The conduct of USCIS officers during the parties' interview on October 8, 2002 was extremely disturbing. Officer Yurgin asked the couple multiple, and I believe I counted more than 14, embarrassing sex-related questions, most of which were offensive and became increasingly harassing, and may reflect Officer Yurgin's prurient interest in sex. Asking one or two questions about intimate marital relations is fair and reasonable, but 14 is excessive. (*Compare* Original Compl. ¶ 105 *with* First Am. Compl. ¶ 104.)

Truth be told, it appears that even the solemn testimony of Jesus Christ and the Twelve Apostles will not convince USCIS to approve an immigrant visa petition in this matter. Simply put, the repeated denials were in every respect arbitrary, capricious, contrary to law, and cries to this Honorable Court for redress. (*Compare* Original Compl. ¶ 114 *with* First Am. Compl. ¶ 115.)

The above-cited allegations of Plaintiffs' First Amended Complaint are most charitably

characterized as pure argument that is immaterial or, in many instances, scandalous.[6] Defendants' Motion to Strike is therefore GRANTED, with leave to amend as specified below. *Cf. Ingram v. Grant Joint Union High Sch. Dist.*, No. CIV S-08-2490 FCD, 2010 WL 3245169, at *10 (E.D. Cal. Aug. 16, 2010) (granting motion to strike from second amended complaint immaterial and scandalous allegations).

### 3. Leave to Amend Will Be Granted One Final Time

It is not clearly apparent that amendment would be futile, and for that reason Plaintiffs are again granted leave to amend their complaint, excluding the equal protection claim dismissed above. *See Freeman*, 2004 WL 2326369, at *2. The second amended complaint must comply with Rule 8 by containing a short and plain statement of the grounds for the Court's jurisdiction, a short and plain statement of the claim or claims, and a demand for the relief sought. The second amended complaint must clearly and concisely set forth what actions by which Defendants give rise to specific claims. The second amended complaint should not address matters not directly related to any of Plaintiffs' claims. It should <u>not</u> contain unnecessary repetition, citations to and/or quotations from case authority, argument of counsel, hyperbole, scandalous and/or immaterial allegations, attempts to negate possible defenses, and the like.

The Court cautions Plaintiffs that any excessively long or digressive amended complaint will <u>not</u> meet the Rule 8 standard. The second amended complaint and any exhibits thereto must be in full compliance with the Federal Rules of Civil Procedure, the Local Rules for the Eastern District of California, and this Court's Procedures. The Court also cautions Plaintiffs that any statements of fact not supported by evidence or reasonable belief may subject them and/or their counsel to sanctions under Federal Rule of Civil Procedure 11.

While Plaintiffs assert that the Court "did not instruct Plaintiffs to gut the complaint or to disassemble it completely and reinvent the wheel," that is <u>precisely</u> what the Court is instructing Plaintiffs to do now, to the extent that is what is required to bring their complaint into compliance with Rule 8. It is not enough merely to reduce the number of pages of the prior complaint, nor is it

---

[6] These are but a few examples. As Defendants point out (and Plaintiffs do not dispute), all but 4 of the 156 paragraphs of the First Amended Complaint read exactly the same as the original complaint.

19

appropriate to file as an amended complaint a reproduction of Plaintiffs' briefs submitted to the USCIS, as those materials are advocacy documents and <u>not</u> pleadings. This Court is one of the busiest in the nation. It is not in the business of writing pleadings for litigants. The Court has done its job by pointing out the law concerning pleadings. It is now Plaintiffs' job to follow that law. Enough trees have been slaughtered. This will be Plaintiffs' final opportunity at pleading.

### III. ORDER

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss (Doc. 29) is GRANTED;

2. Plaintiffs' claim for violation of their rights to equal protection asserted in their second cause of action is DISMISSED WITHOUT LEAVE TO AMEND;

3. Defendants' Motion to Strike (Doc. 29) is GRANTED WITH LEAVE TO AMEND;

4. Plaintiffs' First Amended Complaint (Doc. 28) and its separately-filed exhibits (Doc. 30) are hereby STRICKEN from the docket; and

5. Plaintiffs' second amended complaint shall be filed within 30 days. **If Plaintiffs fail to file an amended complaint in compliance with this order, the Court may dismiss this action with prejudice pursuant to Fed. R. Civ. P. 41(b) for failure to obey a court order.**

IT IS SO ORDERED.

Dated: __**December 26, 2018**__  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE