# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURKAMAL SINGH and<br>ROSIE SANDHU,<br><br>                Plaintiffs,<br><br>   v.<br><br>L. FRANCIS CISSNA, Director, United<br>States Citizenship & Immigration Services;<br>KIRSTJEN M. NIELSEN, Secretary,<br>Department of Homeland Security; JEFF<br>SESSIONS, Acting United States Attorney<br>General,<br><br>                Defendants.<br><br>_____/ | Case No. 1:18-cv-00782-SKO<br><br>**ORDER DENYING PLAINTIFFS'**<br>**MOTION FOR SUMMARY JUDGMENT,**<br>**AND GRANTING DEFENDANTS'**<br>**CROSS MOTION FOR SUMMARY**<br>**JUDGMENT**<br><br>(Docs. 52, 53) |

Plaintiffs Gurkamal Singh and Rosie Sandhu bring this action challenging the denial of a Petition for Alien Relative, U.S. Citizenship and Immigration Services (USCIS) Form I-130, filed by Plaintiff Sandhu on behalf of her husband, Plaintiff Singh. (*See* Doc. 38.) Pending before the Court are Plaintiffs' motion for summary judgment and Defendants' cross motion for summary judgment. (Docs. 52, 53.) Defendants filed an opposition to Plaintiffs' motion on May 20, 2019. (*See* Doc. 53.) Plaintiffs filed a reply brief and opposition to Defendants' cross motion for summary judgment on June 3, 2019. (Doc. 54.) Defendants filed a reply to Plaintiffs' response on June 17,

2019.  (Doc. 55.)

Upon review of the motions and supporting documents, and the administrative record, (Doc. 49), the Court deemed the matters suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing set for July 10, 2019.  (*See* Doc. 57.)

For the reasons set forth below, the Court denies Plaintiffs' motion for summary judgment, and grants Defendants' cross motion for summary judgment.[1]

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Singh is a citizen of India who entered the United States without inspection on or about March 7, 1996, at or near Brownsville, Texas.  (Administrative Record ("AR") 2286.)  On April 20, 1997, Plaintiff Singh filed a petition for asylum, withholding of removal, and protection under the Convention Against Torture.  (AR 265, 2286.)  On August 13, 1997, the U.S. Immigration and Naturalization Service ("INS") initiated removal proceedings against Plaintiff Singh and issued him a notice to appear before an immigration judge.  (AR 265, 2286.)

In 2000, Plaintiff Singh, while living in Fresno, California, met Evelyn Williams, a U.S. citizen who lived in Buttonwillow, California.  (AR 331, 2286.)  On April 24, 2001, Plaintiff Singh married Ms. Williams in Las Vegas, Nevada.  (AR 966–67, 2286.)  On April 30, 2001, Ms. Williams filed an I-130 petition on behalf of Plaintiff Singh to initiate the process for him to become a lawful permanent resident of the United States.  (AR 962, 2286.)  In support of the petition, Ms. Williams and Plaintiff Singh submitted three copies of wedding photographs and a copy of their marriage certificate.  (AR 297–315, 334–37, 966–67, 973–74, 976, 2286.)

Plaintiff Singh and Ms. Williams were originally scheduled to appear for an interview in support of their I-130 petition on July 24, 2002, but the interview was rescheduled because Plaintiff Singh allegedly required a Punjabi/English interpreter.  (AR 956–57, 2286.)  On October 8, 2002, Plaintiff Singh and Ms. Williams appeared, without an interpreter, at the INS office in San Francisco, California, to provide sworn testimony and documentation in support of their I-130 petition.  (AR 976, 2286.)  The interviews of Ms. Williams and Plaintiff Singh, which were

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.  (Docs. 13, 15.)

conducted separately, were video recorded. (AR 976, 2286.)

During the interview with the USCIS officer, Ms. Williams allegedly made statements under oath that demonstrated to USCIS that the marriage between Ms. Williams and Plaintiff Singh was fraudulent. (AR 2286.) The administrative record contains the following handwritten statement purportedly signed and executed by Ms. Williams on October 8, 2002:

> Oh my, I got a call from Peter Singh who asked me if I would be willing to get a so called husband. I said maybe and asked why. Later that day Peter and another man stopped by at my house and we talked a little more about what I needed in a man a housemate [sic]. This all took place the afternoon of the 4/23/01. When Kamel's uncle agreed to pay my PG&E bill in the amount of $1800.00 I said OK. Then 4/24/01 we went to Las Vegas. Where we were married 4/25/01 [sic]. We never have had sex. He has never truly moved in with me. From time to time he calls or stops by my house. We talk more on the phone than in person. I married him because I needed a man around the house, because I was being harassed by my ex-husband and my house was broken into. I just wanted a man there sometime. Also in the agreement he would be able to receive a greencard. If I would stay married to him [sic].

(AR 955, 2286–87.) Following the interview, Ms. Williams withdrew her I-130 petition on behalf of Plaintiff Singh, stating, "[t]his is a fake marriage. And I am requesting to be out of this marriage." (AR 954, 2287.)

After the interview on October 8, 2002, Plaintiff Singh was placed into custody by USCIS agents. (AR 22, 2287.) When agents confronted Plaintiff Singh with Ms. Williams' statements, "he denied everything and stated that his marriage to [Ms. Williams] was real." (AR 2287.) While in custody, Plaintiff Singh initially "refused to provide [Ms. Williams] with any money to return home" from San Francisco to Buttonwillow, but "after further discussion" provided her with some money to use on her return trip home. (AR 22, 2287.)

On June 17, 2003, an immigration judge denied Plaintiff Singh's application for asylum, withholding of removal, and protection and issued a removal order against Plaintiff Singh. (AR 2287.) Plaintiff Singh and Ms. Williams divorced on March 1, 2004. (*See* Doc. 39-8.)

Plaintiff Singh married Plaintiff Sandhu, a U.S. citizen, in Elkton, Maryland, on September 1, 2006. (AR 1136.) Plaintiff Sandhu has filed a series of three unsuccessful I-130 petitions on behalf of Plaintiff Singh. (AR 610, 621, 815, 2643.) The first was filed on October 23, 2006, and

was denied by USCIS in a decision dated September 30, 2009.  (AR 815–28.)  The second petition was filed on September 23, 2011, and was denied by USCIS on January 6, 2014.  (AR 585, 610, 616, 621.)  Plaintiff Sandhu appealed the denial to the Board of Immigration Appeals, which dismissed the appeal on January 20, 2015.  (AR 521, 529.)

On July 13, 2016, Plaintiff Sandhu filed her third I-130 petition ("the Petition") on behalf of Plaintiff Singh, which forms the basis of this lawsuit.  (AR 2643.)  In support of the Petition, Plaintiff Sandhu submitted a marriage certificate; a divorce certificate; sworn declarations/statements; utility bills; joint bank account statements; joint tax returns; family photos; birth certificate; the expert declaration of Alan Hirsch, Esq., and Mr. Hirsch's curriculum vitae, in connection with his analysis of Ms. Williams' October 8, 2002 interview; and a letter from Jeffrey Pearce, a private investigator, reporting Ms. Williams' statements from when Mr. Pearce attempted to inquire about the marriage to Plaintiff Singh.  (*See* AR 2288.)

In his declaration, Mr. Hirsch opined that Ms. Williams was "subject to the interrogation tactics that contribute to false confessions by leading people to conclude that maintaining innocence is futile whereas acknowledging guilt will be benign."  (AR 2702–711.)  Mr. Pearce's letter, dated November 6, 2015, indicates he spoke with Ms. Williams regarding Plaintiff Singh via telephone in February 2015.  (AR 2712–13.)  Mr. Pearce stated Ms. Williams

> became extremely defensive and started using vulgar language.  She [] repeatedly stated that she does not want to get involved anymore with this immigration case because she is afraid of going to jail and being afflicted with a $250,000.00 fine as threatened by immigration officers when she attended the I-130 interview several years ago with Gurkamal Singh.  She was also told if she ever tried to change what the record shows she said at the time of the interview they would prosecute her and put in her jail for 10 years.

(AR 2712.)  Mr. Pearce also stated Ms. Williams said she is "deathly afraid because she was warned and threatened about getting involved in this case over and over again by those specific agents of U.S. Immigration and Customs Enforcement at the interview" and "especially believes they can and will put her in jail because of her criminal history."  (AR 2712.)  Mr. Pearce's letter indicates that Ms. Williams "vividly remembers how afraid she was at the interview and how much she cried and sobbed at the time she signed a statement she was compelled to write."  (AR 2712.)

On February 23, 2017, the U.S. Court of Appeals for the Ninth Circuit denied Plaintiff Singh's petition for review of the Board of Immigration Appeals' order dismissing his appeal from an immigration judge's decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. *Singh v. Sessions*, 678 F. App'x 515 (9th Cir. 2017). On March 30, 2017, Plaintiff Singh filed an application for stay of deportation or removal for twelve months beginning March 10, 2017. (AR 1119–127.) Plaintiff Singh's petition for rehearing or rehearing en banc was denied by the Ninth Circuit in October 2017. (AR 1292.)

On August 9, 2017, Plaintiffs personally appeared for an interview relating to the Petition at the USCIS Philadelphia Field Office. (AR 2289.) During the interview, Plaintiff Singh was asked additional questions to obtain sworn testimony regarding his marital relationship with Ms. Williams. (AR 2289.) He testified that he could not remember if he or Ms. Williams proposed because the decision to get married "just happened." (AR 2289.)

On October 19, 2017, USCIS issued a Notice of Intent to Deny ("NOID") the Petition. (*See* AR 2289.) In response, Plaintiff Sandhu submitted rebuttal evidence in the form of 18 documents along with a 31-page letter from her attorney, which claimed that Ms. Williams was subjected to abuse, intimidated, and coerced by the interviewing USCIS officer at the time she said that her marriage to Plaintiff Singh was a sham. (*See* AR 2313–42, 2289–90, 2293–94.)

On March 13, 2018, USCIS issued a Notice of Decision ("NOD") denying the Petition, finding that, based on "the results of interviews," which entailed "discrepant and contradictory testimony," the documentary evidence, and Evelyn Williams' own admissions regarding her participation in a marriage fraud scheme, the Petition was prohibited under Section 204(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1154(c), because "substantial and probative evidence establish[ed] that [Plaintiff Singh] previously entered into a sham marriage" with Ms. Williams "in an attempt to gain immigration benefits." (AR 2284–92.) The NOD indicated that, according to USCIS records, after Ms. Williams executed her sworn statement and withdrawal, she stated to the immigration officials that the previous interview was rescheduled because "she did not want to continue with the marriage fraud scheme" and that Plaintiff Singh's relatives "threatened her with harm if she did not go through with" the scheme and "harassed her." (AR 2287.) It also

5

noted that Ms. Williams' I-130 petition on behalf of Plaintiff Singh was filed on "the sunset date of Section 245(i) of the [INA]."[2] (AR 2286.)

The USCIS rejected Plaintiff Sandhu's argument that the October 8, 2002, interview of Ms. Williams was an example of "questionable interrogation tactics," and concluded that Plaintiff Sandhu failed to meet her evidentiary burden to "establish that [Plaintiff Singh] did not seek to obtain benefits through a prior sham marriage." (AR 2290–91.)

**B.    Plaintiffs' Second Amended Complaint**

On October 1, 2018, this Court granted in part Defendants' motion to dismiss Plaintiffs' original complaint. (Doc. 27.) Specifically, the Court dismissed, with prejudice, Plaintiffs' causes of action brought under the INA and 42 U.S.C. § 1983, and dismissed, with leave to amend, Plaintiffs' equal protection claim. (*See id.* at 11, 15–17, 25.) The Court however, denied Defendants' motion to dismiss Plaintiffs' claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and procedural due process causes of action. (*See id* at 17–25.) On October 30, 2018, Plaintiffs filed their First Amended Complaint. (Doc. 28.)

On December 27, 2018, the Court granted Defendants' motion to dismiss and motion to strike Plaintiffs' First Amended Complaint. (Doc. 33.) Specifically, the Court dismissed with prejudice Plaintiffs' equal protection claim and gave Plaintiffs one final opportunity to file a second amended complaint that complied with the pleading requirements of the Federal Rules of Civil Procedure and the Court's previous Orders. (*Id.* at 17–20.)

On January 25, 2019, Plaintiffs filed their Second Amended Complaint ("SAC") against Defendants L. Francis Cissna, Director of USCIS, Kirstjen M. Nielsen, Secretary of the Department of Homeland Security, and Jeff Sessions, Acting Attorney General of the United States, in their official capacities (collectively, "Defendants"), seeking a declaratory judgment that Plaintiff Singh is entitled to classification under the INA as an "immediate relative" of a U.S. citizen and an order enjoining Defendants from removing Plaintiff Singh from the United States until his claims have been heard or reviewed and declaring their conduct unconstitutional. (*See* Doc. 38 at 19.) Plaintiffs

---

[2] Section 245(i) of the INA permits certain individuals who were otherwise ineligible for adjustment of status in the United States to pay a penalty fee for the convenience of adjusting status without leaving the United States, so long as the individual was a beneficiary of an immigrant visa petition filed on or before April 30, 2001. *See* 8 U.S.C. § 1255(i).

assert the following claims in the SAC: (1) violation of the APA, 5 U.S.C. § 701; (2) violation of substantive due process under the Due Process Clause of the Fifth Amendment; and (3) violation of procedural due process under the Fifth Amendment. (*See* Doc. 38.)

Plaintiffs challenge USCIS's decision to deny the Petition on the grounds that it was arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA. (Doc. 38 ¶¶ 1, 71–76.) Plaintiffs allege that the denial of the Petition by USCIS violated their substantive and procedural rights under the Due Process Clause by, respectively, "den[ying] them the fundamental right to preserve the integrity of their family" and not affording them "the opportunity to confront and/or cross examine" Ms. Williams or the interviewing USCIS officer. (*Id.* ¶¶ 78, 84.)

### C.  Statutory and Regulatory Framework

Adjustment of status is governed by section 245 of the INA, 8 U.S.C. § 1255 ("Section 1255"). Section 1255(a) states that:

> [t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Although the text of Section 1255 expressly authorizes the Attorney General to adjust status, that authority is now vested in the Secretary of Homeland Security by virtue of the Homeland Security Act of 2002, 6 U.S.C. §§ 101 *et seq.*; 6 U.S.C. § 271(b); *see also Clark v. Martinez*, 543 U.S. 371, 375 n.5 (2005) (noting that authority formerly exercised by the Attorney General and the INS under similar provision of the INA was transferred to the Secretary of Homeland Security and divisions of that Department, including USCIS, by the Homeland Security Act). Because of this transfer, the authority to adjudicate adjustment of status applications is now vested in the Director of USCIS. *Id.*; 8 C.F.R. § 245.2(a) (granting USCIS jurisdiction to adjudicate adjustment of status applications). Similarly, the authority to adjudicate I–130 visa petitions was transferred from the INS (and the Attorney General) to the Director of USCIS. 6 U.S.C. § 271(b);

8 C.F.R. § 204.1 & 204.2.

The application for adjustment of status to that of lawful permanent resident is USCIS Form I–485. 8 C.F.R. § 299.1. To be eligible for adjustment of status based on a family relationship to a citizen or a lawful permanent resident, an applicant must have an approved immigrant visa petition, the Petition for Alien Relative (Form I–130), in which the petitioner asks the USCIS to confirm the family relationship. *See* 8 U.S.C. § 1255(a); 8 C.F.R. §§ 204.1(a)(1), 204.2. *See* 8 U.S.C. §§ 1154(a)(1)(A)(i) and (b); 8 C.F.R. § 204.1(a). In visa petition proceedings, such as the adjudication of an I–130 by USCIS, the burden of proving eligibility for the benefit sought is on the petitioner. 8 U.S.C. § 1361.

A marriage entered into for the purpose of circumventing immigration laws is considered a fraudulent or sham marriage and is not recognized as enabling an alien spouse to obtain immigration benefits. *Vasquez v. Holder*, 602 F.3d 1003, 1014 n.11 (9th Cir. 2010) (citations omitted). Title 8 U.S.C. § 1154(c) provides in pertinent part:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) ("Section 1154(c)"); *see also* 8 C.F.R. § 204.2(a)(1)(ii). Thus, where there is "substantial and probative" evidence of such an attempt or conspiracy "contained in the alien's file," the petition must be denied, "regardless of whether that alien received a benefit through the attempt or conspiracy." 8 C.F.R. § 204.2(a)(1)(ii). Further, once an alien is found to have engaged in marriage fraud, Section 1154(c) forecloses the possibility of any subsequent visa petition ever being approved on behalf of the alien. *Avitan v. Holder*, No. C–10–03288 JCS, 2011 WL 499956, at *7 (N.D. Cal. Feb. 8, 2011) (citing *Ghaly v. Immigration & Naturalization Serv.*, 48 F.3d 1426, 1436 (7th Cir. 1995) (acknowledging that Section 1154(c) is a "harsh law" because, an alien "can never become a citizen of the United States or even reside permanently in this country" once a finding has been made that the alien entered or attempted to enter into a sham marriage)). A prior

admission of marriage fraud made in conjunction with a withdrawal of an earlier I–130 petition can be overcome by new evidence. *Matter of Laureano*, 19 I & N. Dec. 1, at *3–4 (1983) (affirming denial of I–130 petition after earlier petition was withdrawn and petitioner admitted that the earlier petition was based on a fraudulent marriage). However, a petitioner seeking adjustment of status under these circumstances bears a "heavy burden" to establish that a marriage is legitimate. *Id.* at *4.

## II. DISCUSSION

Plaintiffs contend they are entitled to summary judgment because USCIS's denial of the Petition (1) was arbitrary and capricious under the APA and (2) violated Plaintiffs' due process rights under the Fifth Amendment. (Doc. 52 at 5–18.) Defendants respond that the denial of the Petition was reasonable, supported by the evidence in the record, and agency action entitled to deference under the APA. (Doc. 53 at 14–20.) Defendants contend that there was no due process violation because the denial of the Petition did not deprive Plaintiffs of a fundamental liberty interest and Plaintiffs received all the process to which they were entitled. (*Id.* at 28–33.)

### A. Summary Judgment Standard in Administrative Review

In deciding a motion for summary judgment challenging a final administrative decision under the APA, "the district court's review of an agency's decision is usually limited to the administrative record." *US Citrus Science Council v. United States Dept. of Agriculture*, 312 F. Supp. 3d 884, 894 (E.D. Cal. 2018) (citing 5 U.S.C. § 706). Thus, "the usual 'genuine dispute of material fact' standard for summary judgment"[3] does not apply in an APA case. *Id.* (citing *San Joaquin River Group Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1083–84 (E.D. Cal. 2011)). "Put another way, in the context of reviewing an administrative decision under the APA, there are normally no 'disputed facts that the district court must resolve.'" *Id.* (citing

---

[3] Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

*Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)).  Summary judgment "is the appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did."  *Occidental*, 753 F.2d at 770.

**B.     Defendants are Entitled to Summary Judgment on Plaintiffs' APA Claim (Claim One)**

      **1.     Legal Standard**

The APA subjects to judicial review any "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 706(2)(A).  This "standard of review is a narrow one," demanding a "searching and careful" inquiry that assesses "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  "The court is not empowered to substitute its judgment for that of the agency."  *Id.*  Nor is the court required to resolve any facts where relief is sought under the APA.  *Occidental*, 753 F.2d at 769.  Rather, the court's task is to determine whether the evidence in the administrative record permitted the agency to make the decision it did.  *Id.*  In reviewing agency action, the agency's factual findings are reviewed under the substantial evidence standard.  *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003), *amended by* 339 F.3d 1012 (9th Cir. 2003).

A court should uphold an agency decision even if it is "of less than ideal clarity," so long as "the agency's path may reasonably be discerned."  *Northwestern Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1478 (9th Cir. 1994) (citing *Motor Vehicle Mfr. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).  The agency need only show "a rational connection between the facts found and the choices made."  *Motor Vehicle Mfr. Ass'n*, 463 U.S. at 43 (citation omitted).  "[R]eview is especially deferential in the context of immigration policy."  *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997).

### 2. Analysis

As stated above, USCIS may deny an I-130 petition where there is "substantial and probative evidence" of marriage fraud. 8 C.F.R. § 204.2(a)(1)(ii). Accordingly, Defendants are entitled to summary judgment on Claim One of the SAC if USCIS's determination that this standard was met was not arbitrary and capricious. *See Avitan*, 2011 WL 499956, at *11. The Court has reviewed the administrative record, including the video recordings of the October 8, 2002 interviews, and finds that the evidence in the record was sufficient to support the agency's decision and USCIS's decision was not arbitrary and capricious.

The evidence in the record relied upon by USCIS in finding Plaintiff Singh committed marriage fraud included: (1) Plaintiff Singh and Ms. Williams rescheduled their original interviews because of the need for an interpreter, but then appeared at the rescheduled date without an interpreter; (2) the only evidence they could produce to prove their relationship were three wedding photographs and a copy of their marriage certificate; (3) Plaintiff Singh and Ms. Williams gave contradictory testimony; (4) Ms. Williams testified under oath, and while being video recorded, that the marriage was a sham and she married Plaintiff Singh to help him obtain an immigration benefit; (5) Ms. Williams executed a detailed written sworn statement that the marriage was fraudulent; (6) Ms. Williams executed a formal request to withdraw her petition stating that the marriage was fake; (7) Plaintiff Singh initially refused to give Ms. Williams money to return home from San Francisco after the interviews; and (8) during the August 9, 2017 interview in connection with the Petition, Plaintiff Singh gave testimony about important details of his marriage to Ms. Williams that flatly contradicted his October 8, 2002 testimony, including whether he or Ms. Williams proposed. (AR 2284–92.)

The Court finds that the evidence in the record is sufficient to support USCIS's finding that the marriage between Plaintiff Singh and Ms. Williams was fraudulent. *See Avitan*, 2011 WL 499956, at *12; *see also Roman v. Riordan*, 209 F. Supp. 3d 371, 379 (D. Mass. 2016) (finding

USCIS determination that the plaintiffs' marriage was fraudulent was substantially supported by the record where "[t]he evidence supporting a bona fide marriage [was] highly suspect" and there were "inconsistent factual statements made by the Plaintiffs to the USCIS[.]").

The Court rejects Plaintiffs' argument that USCIS relied solely on statements made by Ms. Williams, contradictory testimony of Plaintiff Singh and Ms. Williams, and the fact that Plaintiff Singh initially refused to give Ms. Williams money to get home after the interview, to determine that substantial and probative evidence of marriage fraud existed, and "ignored vast rebuttal evidence submitted by the Plaintiffs." (Doc. 52 at 7.) "An agency is not required to 'discuss each piece of evidence submitted.'" *Pirir-Boc v. Holder*, 750 F.3d 1077, 1086 (9th Cir. 2014). If the record does not clearly indicate otherwise, even a "general statement that the agency considered all the evidence before it may be sufficient." *Cole v. Holder*, 659 F.3d 762, 771–72. (9th Cir. 2011). Here, USCIS gave a general statement indicating that it independently considered all the evidence before it. (AR 2286.) As explained above, however, USCIS went much further than that and explicitly mentioned much of the evidence submitted, including the rebuttal evidence, and explained why Plaintiffs' contention that the confession of Ms. Williams was somehow "coerced" was unconvincing. (AR 2284–92.) Not only was USCIS's decision that Plaintiff Singh and Ms. Williams previously entered into a sham marriage not arbitrary, it was very well supported by the evidence and thoroughly explained. (*See* AR 2284–92.)

Finally, the Court rejects Plaintiffs' argument that the alleged "coercion" of Ms. Williams' confession and withdrawal of her petition "taints the entire process such that the denial of [the Petition] must be vacated." *See Avitan*, 2011 WL 499956, at *12. Even assuming Ms. Williams' confession was coerced, there is "ample evidence in the record—apart from any admission made in connection with an earlier withdrawal, coerced or not—" that the marriage between Plaintiff Singh and Ms. Williams was fraudulent. *See id. Cf. Sehgal v. Lynch*, 813 F.3d 1025, 1031 (7th Cir. 2015) ("[the plaintiffs'] allegations of coercion are too vague and inconsistent to undermine his confession

of fraud.").

Thus, the Court finds Defendants are entitled to summary judgment on Plaintiffs' APA claim, and proceeds to consider Plaintiffs' due process claims.

**C.      Defendants Are Entitled to Summary Judgment on Plaintiffs' Due Process Claims (Claims Two and Three)**

### 1.      Legal Standards

The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "A threshold requirement to a substantive or procedural due process claim is [a] plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). The Ninth Circuit has recognized that "[i]mmediate relative status for an alien spouse is a right to which citizen applicants are entitled [so] long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility" and that "this protected interest is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013); s*ee also Shashlov v. Sessions*, Case No. 2:17-cv-2166-JFW-KS, 2017 WL 6496440, at *3 (C.D. Cal. Dec. 4, 2017).

"Due Process is flexible and calls for procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). It is not "a technical conception with a fixed content unrelated to time, place, and circumstances." *Id*. (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886 (1961)). Moreover, not every case requires a formal hearing or an opportunity to cross-examine witnesses to satisfy due process. To determine what process is required, courts consider three factors: (1) the private interest at stake; (2) the risk of erroneously depriving the petitioner of that interest under the procedures currently in use, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens of adding or substituting the procedures used. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The due process guarantees of the Fifth Amendment "include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter

what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). "Substantive due process protects an enumerated list of constitutionally protected fundamental rights." *Boyal v. Napolitano*, No. 2:09-cv-03263 MCE-KJN, 2011 WL 864618, at *4 (E.D. Cal. Mar. 10, 2011) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997) (listing specified fundamental rights)). Additional fundamental rights subsequently created must be "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington*, 521 U.S. at 721 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Procedural due process protections, however, apply to many interests that do not qualify as "fundamental," including property interests such as welfare benefits and public employment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–77 (1972).

Thus, "[w]hereas substantive due process protects against government actions which deprive citizens of certain rights, regardless of the unfairness of procedures used, procedural due process protects citizens not from the deprivation itself, but only the mistaken or unjustified deprivation of the asserted right." *Boyal*, 2011 WL 864618, at *4 (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

### 2. Analysis

#### a. Substantive Due Process

Defendants move for summary judgment on Claim Two of the SAC alleging substantive due process violations, on the basis that Plaintiffs do not have a fundamental right to reside together in the United States. (*See* Doc. 53 at 28–29.) The Court agrees with Defendants. The Ninth Circuit has repeatedly rejected the notion that immigration enforcement resulting in family separation inherently violates a U.S. citizen's constitutional rights. *See Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018); *Burbank v. Nielsen*, 708 F. App'x 465 (9th Cir. 2018); *Morales-Izquierdo v. Department of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010), *overruled in part on other*

*grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc). *Cf. De Mercado v. Mukasey*, 566 F.3d 810, 816 (9th Cir. 2009) (stating, in dicta, that "family unity" theory of due process in immigration context is "implausible" because "no authority [has been identified] to suggest that the Constitution provides [alien petitioners] with a fundamental right to reside in the United States simply because other members of their family are citizens or lawful permanent residents"); *Rubio de Cachu v. Immigration and Naturalization Service*, 568 F.2d 625, 627 (9th Cir. 1997).

Plaintiffs do not contend otherwise and, as such, concede this argument. *See Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum."). Accordingly, the Court finds Defendants are entitled to summary judgment as to Claim Two of the SAC.

### b. Procedural Due Process

Although Plaintiffs have not shown they have a fundamental right to live together in the United States, it is well-settled that there is at least a cognizable liberty interest in living with one's immediate family, for which procedural due process protections apply. *See, e.g., Ching*, 725 F.3d at 1157 ("The right to live with and not be separated from one's immediate family is a right that ranks high among the interests of the individual and that cannot be taken away without procedural due process." (quotation omitted)). Accordingly, the Fifth Amendment protects Plaintiffs from "the mistaken or unjustified deprivation" of that interest, *Boyal*, 2011 WL 864618, at *4, and the Court must apply the factors outlined in *Mathews* to determine whether under the particular facts of this case USCIS violated Plaintiffs' due process rights. *See Ching*, 725 F.3d at 1157 (administrative proceedings like the adjudication of I-130 petitions "must be carefully assessed to determine what process is due, given the specific circumstances involved" and must be determined on a "case by case basis.").

### 1. Private Interest

With respect to the first *Mathews* factor, assessment of the private interest that will be affected by the official action, the Court finds that the first factor weighs in favor of Plaintiffs, but only slightly. Given the weight that is afforded to the right to live with and not be separated from one's immediate family, *see Ching*, 725 F.3d at 1157, Plaintiffs have a significant interest at stake. Defendants contend, however, that Plaintiffs' family will not be "irretrievably torn asunder" by the immigration enforcement action here, due to Plaintiff Singh's substantial resources. (Doc. 53 at 30 n.5.) The Court agrees that Plaintiff Singh's resources—the record reflects a net worth of about $30 million—somewhat lessens the private interest at stake and the weight of the hardship Plaintiffs will face by the denial of the Petition. (*See* AR 1295–1301.)

### 2. Erroneous Deprivation

The second *Mathews* factor is the risk of an erroneous deprivation of the protected interest through the procedures used and the probable value of additional procedural safeguards. The parties discuss *Ching* and *Alabed v. Crawford*, 691 F. App'x 430 (9th Cir. 2017), in their summary judgment motions on this issue.

In *Ching*, the Ninth Circuit applied *Mathews* where USCIS denied an I–130 petition under § 1154(c)(1). 725 F.3d at 1157. The *Ching* court found the first two *Mathews* factors weighed heavily in favor of the petitioners because the alien spouse, Ching, was in deportation proceedings and would be removed from the country if the I–130 petition was denied. *Id.* The court also found that Ching had presented "substantial" and "uncontested documentary evidence" to rebut her ex-husband's claim that their marriage was not bona fide. *Id.* at 1159. Accordingly, the court concluded that "under the specific circumstances of th[e] case," due process required a hearing with an opportunity for Ching to cross-examine her ex-husband about his statements that their marriage was not bona fide. *Id.* As to the second factor of *Mathews*, the Ninth Circuit found that the risk of erroneous deprivation was high because USCIS relied *solely* on a six-sentence statement from the

petitioner's ex-husband, obtained from the ex-husband at his home by USCIS officers, to determine that petitioner's and her ex-husband's marriage was fraudulent. *Id.* at 1158. As to the probable value of additional safeguards, the court explained that the ex-husband could have "elaborated on his fraudulent marriage to Ching and explained under what conditions he wrote the statement" and how long he was interviewed and by whom he was interviewed. *Id.*

In *Alabed*, by contrast, the Ninth Circuit affirmed the district court's granting of the government's summary judgment motion in an action challenging the denial of an I-130 petition. 691 F. App'x at 432. In that case, the petitioners argued USCIS violated their due process rights when it failed to allow them to cross-examine certain witnesses and the USCIS officers who interviewed the witnesses. *Id.* The Ninth Circuit stated that USCIS relied on evidence other than a single sworn statement in making its marriage fraud determination, including inconsistent statements made by appellants during their interviews; the lack of supporting evidence establishing the bona fide nature of their marriage; admissions by the petitioner that the marriage was fraudulent, made contemporaneously with the interview; and evidence that the beneficiary was in another relationship. *Id.* at 431. The appellants' rebuttal evidence in that case was also "less compelling" than Ching's rebuttal evidence, and thus "[t]he risk of erroneous deprivation [was] … far lower than it was in *Ching*." *Id.*

The Court finds this case is more analogous to *Alabed* than *Ching* and finds that the risk of erroneous deprivation here is low. Here, like in *Alabed*, USCIS relied upon far more than a single statement in denying the Petition, including (1) contradictory statements made by Ms. Williams and Plaintiff Singh during their interviews; (2) contradictory statements made by Plaintiff Singh during his October 8, 2002 interview and the August 9, 2017 interview in connection with the Petition; (3) a lack of supporting evidence establishing the bona fide nature of their marriage; (4) Plaintiff Singh's general lack of knowledge of Ms. Williams; (5) admissions by Ms. Williams that the marriage was fraudulent, made under oath and contemporaneously with her interview; (6) a sworn, written

confession from Ms. Williams that the marriage was fraudulent; (7) Ms. Williams' affirmative withdrawal of her petition based upon her confession that the marriage between her and Plaintiff Singh was fake; and (8) the suspicious timing of the petition filed by Ms. Williams.  (*See* AR 2284–92, 2317–21.)  Also, unlike in *Ching*, where Ching was "not informed of the circumstances under which [her ex-husband] was visited or his statement was taken," Plaintiffs were informed of the circumstances under which Ms. Williams' statement was taken, and her confession was video recorded, transcribed, and reduced to writing.  *See* 725 F.3d at 1153.

Further, unlike in *Ching*, where the rebuttal evidence was "substantial," "uncontested," and went to the heart of the bona fides of the allegedly fraudulent marriage (including a "sworn declaration … describing in excruciating detail" the intimate relationship), the rebuttal evidence here is weak and the vast majority of it is completely unrelated to the bona fides of Plaintiff Singh's and Ms. Williams' marriage.  *See id.*  For example, the rebuttal evidence submitted includes considerable information about Plaintiff Singh's business, Trius Trucking, including corporate tax returns and partnership agreements, net worth statements, and Trius Trucking employee records.  (AR 2290.)  Other "rebuttal evidence" submitted includes previously submitted affidavits, copies of various petitions filed in the proceedings, Ms. Williams' criminal record, a letter from the Mayor of Los Angeles County attesting to Plaintiff Singh's qualities as a citizen, an order of supervision of Plaintiff Singh, and documents about Plaintiff Singh's investments, none of which is related or relevant to the marriage fraud issue.  (*See* AR 2289–90.)

Finally, the Court finds the additional process Plaintiffs request—cross-examination of Ms. Williams and USCIS officers—has little probable value as Plaintiffs have not shown what new information they expect to elicit from the USCIS officers and Ms. Williams on cross-examination that would change the outcome of the proceedings.  *See Dhillon v. Mayorkas*, 537 F. App'x 737, 738 (9th Cir. 2013).  *Cf. Ching*, 725 F.3d at 1156.  In other words, Plaintiffs have not "proffered any theory under which the cross examination they seek would have enhanced or altered the

adjudication" of the Petition, and the Court finds the process that Plaintiffs request here "could not have made a determinative difference," due to the overwhelming amount of evidence that the marriage between Plaintiff Singh and Ms. Williams was fraudulent, and the little probable added value of the requested cross-examination. *See Dhillon*, 537 F. App'x at 737–38.

Thus, the Court finds that the risk of erroneous deprivation is very low and heavily outweighs the other *Mathews* factors. *See id.* (finding "the second *Mathews* factor [was] dispositive of [the plaintiffs'] due process claim" where there was very little risk of erroneous deprivation through the procedures used).

### 3.    Administrative Burden

As to the third factor, the fiscal and administrative burden of giving Plaintiffs the opportunity to cross-examine, this factor weighs slightly in favor of Plaintiffs. Defendants do not address this factor in their cross motion for summary judgment, strongly suggesting that such burden is, as it was in *Ching*, "relatively slight." 725 F.2d at 1158. Further, although there is no statutory right to an adjudicatory hearing in the context of an I-130 petition, as noted in *Ching*, there is such a right in removal proceedings, and thus there are apparently "no practical problems with such a solution." *Id.* (citing INA § 240(b), 8 U.S.C. § 1229a(b)(4)).

As stated above, the Court finds that considered together, the *Mathews* factors weigh in favor of Defendants. Thus, the Court finds that Plaintiffs were not entitled to any additional process under *Mathews* in the adjudication of the Petition.

Finally, the Court rejects Plaintiffs' argument in their reply brief that USCIS failed to give them all the process required under the statutory and regulatory scheme and violated their procedural due process rights by not giving them sufficient information in the NOD and the NOID[4] regarding

---

[4] Neither party submitted the NOID with any of the pleadings or in the administrative record. However, the contents of the NOID are undisputed and the parties have supplied sufficient information for the Court to gather the contents of the NOID.

alleged contradictory testimony for them to respond.  (*See* Doc. 54 at 5, 7.)  Plaintiffs contend that the NOD and the NOID both state only that "[d]uring the interview, the beneficiary and Evelyn Williams were questioned separately and provided discrepant and contradictory testimony," and that this statement alone gave them insufficient information to respond.  (*Id.* at 7.)  Plaintiffs' argument fails in large part because of the overwhelming evidence in the record that shows Plaintiffs were well aware of the content of the "discrepant and contradictory" answers given at the October 8, 2002 interview.[5]  For example, one of the named Plaintiffs in this case, and the beneficiary of the Petition, Gurkamal Singh, was present on October 8, 2002, and witnessed the contradictory and discrepant testimony himself because he gave it.  (*See* AR 977.)  In fact, Plaintiffs prepared and filed a side-by-side comparison of the interviews of Plaintiff Singh and Ms. Williams.  (Doc. 39-45.)  Plaintiffs also had sufficient information to respond generally since Plaintiffs actually responded and submitted rebuttal evidence consisting of a 31-page letter with over 500 pages of exhibits attached and responded in detail to each "relevant" allegation in the NOID.  (*See* AR 2313–42.)

The transcript of the interviews and the video recordings reflect that the USCIS officer explained to Plaintiff Singh the discrepancies in his and Ms. Williams' testimony, and gave him the opportunity to explain the discrepancies.  (Doc. 39-44 at 33–40; *see also* AR 2319 ("***During the question and answer component, Evelyn Williams and [Plaintiff Singh] were separated, and their discrepant and contradictory responses to the same questions were presented to both parties to allow for explanation and discussion.***") (emphasis in original)).

The regulations do not require more of USCIS.  *See Alabed*, 691 F. App'x at 431; *Gebhart*, 879 F.3d at 988 (finding USCIS gave the plaintiff all the process he was due where it (1) gave the

---

[5] Defendants note some of the discrepancies reflected in the transcript of the October 8, 2002 interviews, including contradictory statements regarding the circumstances of Plaintiff Singh's and Ms. Williams' wedding night, Plaintiff Singh's relationship with Ms. Williams' children, Ms. Williams' relationship with her father, and events that allegedly occurred less than 48 hours before the interviews, including a trip to Chuck-E-Cheese that Plaintiff Singh remembered but Ms. Williams stated never happened.  (*See* Doc. 53 at 17.)

plaintiff notice of its intent to deny his petitions, (2) invited the plaintiff to submit rebuttal evidence, (3) reviewed the documents the plaintiff submitted for review, and (4) issued a "well-reasoned, five-page decision" in response). *Cf. Hassan v. Chertoff*, 593 F.3d 785, 787 (9th Cir. 2010) (finding the plaintiff's procedural due process challenge based on lack of sufficient information to respond failed because the plaintiff "was aware of the information against him. He was questioned about his involvement in the terrorist organization. He was given the opportunity to explain his association during the course of that questioning. The regulation that [the plaintiff] cites requires no more of the government.").

Therefore, the Court finds that USCIS did not violate Plaintiffs' procedural due process rights in adjudicating the Petition, and Defendants are entitled to summary judgment on Claim Three of the SAC.

### III.     CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Plaintiffs' Motion for Summary Judgment, (Doc. 52), is **DENIED**;

2.      Defendants' Cross Motion for Summary Judgment, (Doc. 53), is **GRANTED**; and

3.      The Clerk of the Court is directed to enter judgment against Plaintiffs and for Defendants, and to close the file.

IT IS SO ORDERED.

Dated:   **July 29, 2019**                              /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE